**1811.**

The COMMISSIONERS of Berks County *against* ROSS
and others.

If the obligee
undertakes to
discharge the
principal, or in
any considera-
ble degree to
lessen his res-
ponsibility,
without consult-
ing the surety,
the surety is
discharged; but
the mere ac-
ceptance of a
common appear-
ance in a suit by
the obligee
against the prin-
cipal, in conse-
quence of which
the latter exe-
cuted an assign-
ment to secure
part of the debt,
has no effect
upon the obliga-
tion of the sure-
ty, although it
furnished the
principal with
an opportunity
to leave the
state.
   There is no
rule of law
against granting
a new trial after
two concurring
verdicts, nor
will the court
hesitate to do
it, if the ver-
dicts are against
law.
   The principle
which has go-
verned courts in
refusing the
plaintiff a new
trial, where his
demand has
been a *hard* one,

THIS was an appeal from the decision of Judge *Brack-
enridge* at a Circuit Court for *York* county in *May* 1809.

   The action was debt upon a bond given by the defendants
to the plaintiffs, to secure the performance of a contract
made by a certain *Obadiah Osburn* with the plaintiffs, to build
a bridge over the *Schuylkill* at *Reading*. *Osburn* did not com-
ply with his contract; and in *June* 1804, the commissioners
sued him in covenant, and demanded bail in 5000 pounds;
but they afterwards without consulting or giving notice to
his sureties, accepted his appearance, on his assigning to
them all his property on account of the moneys which they
had advanced him. After being discharged, he left the state.
The commissioners sold the property, the proceeds of which
reduced their demand to about 8000 dollars, for which the
present action was brought. There was no dispute about
facts, and the charge of the court was in favour of the plain-
tiffs; but the jury, as another jury had done before, found for
the defendants, and judge *Brackenridge*, although the ver-
dict he said was decidedly against his opinion, overruled a
motion for a new trial, that it might be heard in bank upon
appeal.

   *Hopkins* for the plaintiffs. The verdict was most clearly
against law, evidence, and the charge of the court; in fact
so clearly, that the only question in the case is, whether the
court will grant a new trial after two concurring verdicts
against law. If they will not, there is an end to all certainty
in the law, and to all stability in the possession of property.
The prejudices, or the honest but erroneous feelings of a
jury, accompanied with sufficient obstinacy, will triumph
over the authority of the court. As to the facts in this case
there was no dispute. The execution of the bond by the de-

does not in any degree apply to actions against sureties for the default of a
principal. Although a surety may be distressed by the demand, yet it is not in point of law
a *hard* one.

1811.

COMMIS-
SIONERS

BERKS CO.

ROSS.

fendants, the nonperformance of the contract by *Osburn*, and the damage to the plaintiffs in consequence of their advances, were indisputable; the only point in the case was a point of law, arising out of the discharge of *Osburn* upon a common appearance, instead of taking bail; and as to this there could be no doubt that it was with the plaintiffs. They were not bound to consult the defendants as to the discharge of *Osburn* from arrest, because they were not bound to arrest him at all. How they should sue, and whether they should sue or not, was a question for themselves only. But suppose it was not, the inquiry as to the surety always is, whether in equity he is intitled to relief, in consequence of an injury he has received by the conduct of the obligee to the principal; and it was plain here that the sureties were benefited by the discharge of *Osburn*, as the commissioners in consequence of it got an assignment of all his property, which has been sold, and credited to the defendants. The jury could have had no other reason for their verdict, but that the county was on one side, and individuals on the other.

*Bowie* for the defendants. The commissioners are intitled to no favour as against the defendants, because the very plan of the bridge which *Osburn* contracted to build, was impracticable in the estimation of every one who saw it, and yet the commissioners proceeded to advance him nearly ten thousand dollars for the object. Their own indiscretion has produced the loss; and under existing circumstances, the county should be made to bear it. The demand is obviously a hard one against the defendants. They have received no consideration, the loss results in some measure from the imprudence of the plaintiffs, and therefore as the jury has fixed it upon them, the court ought not to shift it. A motion for a new trial is to the discretion of the court, to their sense of equity and justice; and although an established principle of law may be with the plaintiff, yet in a hard action they will not disturb the verdict of a jury against him. *Dunkly* v. *Wade* (a), *Smith* v. *Brampston* (b), *Deerly* v. *The duchess of Mazarine* (c),

(a) 2 *Salk.* 653.    (b) 2 *Salk.* 644.    (c) 2 *Salk.* 645.

COMMIS-
SIONERS
of
BERKS Co.
*v.*
Ross.

*Goslin* v. *Wilcock (a,.* But the point of law was in the present case with the defendants. Sureties are highly favoured in equity, where they are never made responsible except upon the clearest grounds. *Radcliffe* v. *Graves* (b), *Sheffield* v. *Lord Castleton* (c). If the obligee gives up a tittle of his hold upon the principal, the surety is discharged. He has no right to say, I will give up a security I have against the principal, either in his person or property, and resort to his surety. The surety has in equity an interest in the obligee's obtaining the full benefit of any lien he has upon the principal or his property; and if he surrenders this without consulting the surety, there is an equitable bar to his claim upon the latter. Here the principal was under arrest, and he was liberated without notice to the defendants. The property which was taken as a substitute for the bail, might not have been all that he possessed; it did not appear that it was. More might have been discovered by the sureties, and better sales might have been made under their management of that which was discovered. It was inequitable in the commissioners to rely upon their ultimate security in the defendants' bond to such an extent, as not to consult them as to the intermediate steps with the principal before the sureties were called upon. Under these circumstances the court will not set aside a second verdict. It is a general rule, that if a new trial has been granted, and there be a verdict for the same party in whose favour the verdict upon the first trial was given, the court will not grant a third trial; 6 *Bac.* 658.; unless some unfair practice were used in obtaining it, 6 *Mod.* 22. *Anon.,* or the jury have been guilty of misbehaviour. And this doctrine was adopted by the court in *The Lessee of Willis* v. *Bucher,* (d) where the chief justice says, that had the case gone to the jury in the manner in which by law it ought to have been submitted to them, he should have been against a new trial. It ought to be a very extraordinary case in which two concurring verdicts are disturbed.

TILGHMAN C. J. The defendants' counsel founded his argument against granting a new trial on three points. 1st,

---

(a) 2 *Wils.* 307.                (c) 2 *Vern.* 393.
(b) 1 *Vern.* 196.                (d) 2 *Binn.* 467.

That it was a hard case. 2d, That the verdict was agreeable to the law. 3d, That there have been two verdicts for the defendants.

1. Not much need be said on the first point. There is no more hardship in this case, than in cases in general where a surety has to pay money. It is unfortunate, that a man should be obliged to pay for the default of his friend, and in that sense it may be said to be hard; but it would be much harder if the rules of property should be set aside, because the loss is to fall on the *sureties*, upon whose credit the principal was trusted in the beginning.

2. The defendants contend that they were injured by the conduct of the plaintiffs in the action brought against *Osburn*. If so, they ought not to be liable to this action; for the law certainly is, that if the obligee undertakes to discharge the principal, or in any considerable degree to lessen his responsibility, without consulting the surety, he ought not to be permitted to demand payment of the surety. But how is the fact? The plaintiffs did not discharge *Osburn*, they only accepted his appearance without bail; and in consideration of this, they obtained an assignment of all his property, which they sold to the best advantage, thereby lessening the sum for which the defendants were responsible. If instead of assigning to the plaintiffs, he had gone to jail, and been discharged by the insolvent act, his property would have been *divided* among his creditors. So that in fact, the plaintiffs, by accepting the appearance of *Osburn* without bail, did a considerable service to the defendants. To say that this should discharge the defendants from all responsibility, would be equally contrary to justice and equity. It would be a most ungrateful return to a substantial benefit. No authority has been cited or can be shewn to support such a principle.

3. It was said by me in *Willis's Lessee* v. *Bucher*, 2 *Binney* 467., that it must be a very extraordinary case in which a new trial ought to be granted, after two concurring verdicts on matters of *fact*. I adhere to that sentiment, but it has no bearing on the case before us. Here is no dispute about facts. There was no discordance or difficulty in the evidence; but two juries have differed from the court, in the law resulting

from the facts. It is said by all the court, in the case of *Goodwin* v. *Gibbons*, 4 *Burr*. 2108, that there is no rule of law against granting a new trial after *two verdicts*. If there was such a rule, there would no longer be any certainty in the law. Principles the most firmly established might be overturned, because a second jury were obstinate and rash enough to persevere in the errors of the first, in a matter, confessed by all to be properly within the jurisdiction of the court; I mean the construction of the law arising from undisputed facts. This is a state of things, which no man would wish to see. I believe that in this instance the two juries have erred from a principle of humanity. On one side they saw a rich county, to whom the object of dispute, though in itself considerable, was not of much moment. On the other a few unfortunate individuals exposed to ruin. If none but the parties to this suit were to be affected by the verdict, those benevolent feelings might be safely indulged. But when it is reflected, that a precedent is about to be set, which may have a pernicious effect on those regulations, on which the peace and security of the country depend, I feel it a duty incumbent on this court, to submit the matter to the deliberate consideration of another jury.

YEATES J. The plaintiff's motion for a new trial rests on the grounds of the verdict in the Circuit Court being contrary to evidence, the law, and the charge of the court. Against the motion it is objected, that upon the face of the model of the bridge referred to in the argument, it would be absolutely impossible to build such a bridge, so as to insure its duration for seven years. Admit the fact to be so, which is at least problematical, I do not see how this circumstance can affect the present case. The law is clearly settled, that if the condition of a bond &c. be impossible at the time of making the condition, the obligation &c. is single. It is illustrated by an example. If a man be bound in an obligation &c. with condition, that if the obligor do go from the church of *St. Peter* in *Westminster* to the church of *St. Peter* in *Rome* within three hours, then the obligation to be void, the condition is void and impossible, and the obligation standeth good. *Co. Litt.* 206. *a. b.*

It is also objected, that the discharge of the principal *Obadiah Osburn* from the arrest in the suit brought against him by the plaintiffs in *Berks* county, and accepting his appearance in that action, amounted to a release of his sureties. No authority has been shewn in support of this position. On the contrary it is evident, that the obtaining a release from *Osburn* of all his property real and personal, disposing of it to the best advantage, and giving his sureties credit for the amount, was highly beneficial to them.

But it is said, that a new trial will not be granted in a *hard* action. The cases cited are of suits brought for negligently keeping a fire, whereby the plaintiff's house was burnt, malicious prosecution for bringing a suit in an inferior court, and where a woman of quality living in *England* as a *feme sole*, set up her marriage in a foreign country, to avoid the payment of her just debts. *Farewell* v. *Chaffey et al.*, 1 *Burr.* 54. Lord *Mansfield* reviews the cases on this branch of the law, and says, the verdicts therein were against evidence and the strict rule of law, or obtained through surprise; but the court would not give a second chance of success to a hard action, or an unconscionable defence. A new trial ought to be granted to attain real justice; but not to gratify litigious passions upon every point of *summum jus*. It is true, that in common language, where a surety is obliged to pay the debt of his principal, we attribute *hardship* to the case; but this does not hold in a legal sense. Where one man becomes security for the debt or engagement of another, he substitutes himself in his place; he makes the debt or engagement his own upon the default of the principal, in every event which falls within the true meaning of his undertaking. In this instance, the commissioners of *Berks* county entered into the contract with *Osburn*, on the defendants' becoming his sureties, that he should fairly perform the stipulations on his part. Relying on the security thus given, they have advanced to him the large sum of 9596 dollars and 66 cents; but the bridge remains unbuilt, and the agreement has been violated. Every principle of honesty and moral obligation enjoins on the defendants the duties of making full compensation to the plaintiffs for the injury they have sustained by the nonperformance of the contract. It would be glaring in-

1811.

COMMIS-
SIONERS
of
BERKS Co.
*v.*
ROSS.

justice, to suffer the defendants to shelter themselves under the pretext of hardship, from doing an act, which they have stipulated to perform by their solemn deed. If it was impracticable to build the bridge, according to the plan proposed by *Osburn*, they were bound to see to it in the first instance, before they executed the instrument. By becoming coobligors in the bond, they adopt the model, as if made by themselves, and are responsible for all the consequences. It will not be pretended that this is a case of small value, where the play is not worth the candle.

But it has been strongly relied on, that a new trial has already been granted; and that a second verdict having gone the same way, a third trial will not be granted, unless upon the particular circumstances of a case, as where the second verdict has been obtained by any bad practice, 6 *Mod.* 22. I accede to this doctrine, when restricted to damages found by a second set of jurors on a mere matter of fact, and the case of *Chambers* v. *Robinson*, 1 *Stra.* 691., warrants the position with that limitation. There, in an action for a malicious prosecution for perjury, wherein the indictment stated the perjury so incorrectly, that the then defendant could not have been convicted thereon, there was a recovery of 1000*l.* damages, and a new trial was granted upon payment of costs. A new trial was had, and the same damages were given again. The defendant applied to the court for a third trial; but the court said it was not in their power to grant it, and cited *Clerk* v. *Udall*, 2 *Salk.* 649., where the same doctrine obtained. In that case, the Chief Justice is reported to have said, that where upon a second trial the jury had doubled the damages, a new trial should be granted. This appears to me to accord with the true spirit of our system of jurisprudence. The jurors judge of facts, but the court necessarily to effectuate the object of their sitting, have a superintending power over verdicts, and where they are plainly against the great weight of evidence, will award a new trial, though there should be a contrariety of evidence. In the language of the Chief Justice in *Willis's Lessee* v. *Bucher*, 2 *Binn.* 467., " it " must be a very extraordinary case indeed, in which I could " be induced to give my opinion for a new trial, after two " verdicts on matters of fact." Where facts are disputed,

and have undergone a thorough investigation by two sets of jurors, who have found in the same way, it would be an usurpation of the rights of juries on the part of the court, to annul what they have done. Here there is no such contest. The amount of the money paid to *Osburn*, and the sum arising from the sale of his property, are admitted. It is not pretended, that there is any ambiguity in the wording of the obligation executed by the defendants, or that *Osburn* has performed his agreement. Whether the accepting the appearance of *Osburn* in the action in *Berks* county, and applying the full amount of sales to the credit of his sureties, operates as a discharge of the defendants from their responsibility, can only be considered as mere matter of law, concerning which there can be no difficulty whatever. The question then before us is reduced to a single point. Are the court bound by any imperious rule of law to give their sanction to a second verdict manifestly against the justice of the case, the evidence, the law, and the charge of the court? The unanimous opinion of all the judges of the King's Bench in *Goodwin* v. *Gibbons*, 4 *Burr.* 2108., delivered in 1767, affords a ready answer to the question. " There is no such general rule. A new trial must depend " upon answering the ends of justice." I am much gratified by finding that the judges of the Superior Court of the state of *South Carolina* have adopted the same doctrine in *Moore's Admrs.* v. *Cherry*, 1 *Bay.* 269., and will content myself with expressing my entire concurrence with the opinions of *Waties* and *Bay* justices, as detailed in that report.

My opinion on the whole matter is, that the judgment of the Circuit Court be reversed, and that the record be remitted to the court of Common Pleas of *York* county for a new trial.

New trial awarded.