Chief Justice Bibb
delivered the Opinion of the Court.
In June, 1801, William Coleman as assignee of William Wood, recovered a judgment for £1010 5, besides cost, against John Edwards and Amos Edwards his appearance bail, in the Paris district court, for damages, for breach of covenant. To this Edwards sued a writ ox error with supersedeas. Yertner, a creditor of Wood, exhibited his bill in the Federal Court for the Kentucky District, against Wood, Coleman and Edwards the principal, to set aside a judgment by Wood to Coleman as fraudulent, and to have the debt from Edwards applied to the payment of Vertner’s demand.
Pending the writ of error and the bill of Vertner, Coleman and John Edwards, entered into an agree-anent under their hands-and seals, bearing date, September 1st, 1801, which recites that said Coleman .as assignee of William Wood, had recovered a judgment against the said John Edwards, in the district court of Paris, ,on an agreement between the said Wood and Edwards, which was assigned to said Coleman; that said Edwards had obtained a writ of supersedeas to said judgment; that Daniel Vert-ner had commenced a suit against them in the Federal Court, forhidjng Edwards from paying the a-mouni or any part of said judgment to Coleman, or to Wood; that Edwards had paid Coleman £347 7 -9, in part of the judgment; it was thei’efore mutually agreed, Edwards and Coleman should defend against Vertner to their utmost, and if Coleman prevailed against Vertner, then said Coleman was not to take any advantage of said Edwards, “but doth hereby agree to receive the remainder that may be due him in manner and agreeable to the contract referred to as above, between said Edwards and Wood, after having given the said Edwards three *568 months previous notice of the" final decision in favor of him, the said Coleman, and farther to allow the said Edwards all just credits, off-sets and. discounts which he, may bring forward against his contract with Wood as above.
Verlner’s bill dismissed.
John Edwards discharged under the F ed-eral bankrupt laws.
Cases ofscire facias.
At May term, 180$, Vertner’s suit against Wood, Coleman and Edwards, was dismisped by the Federal Court for want of jurisdiction.
In October, 1803, Coleman petitioned, and obtained from the judge of the district court of the United States, a commission of bankruptcy against said John Edwards — proved his debt before the commissioners to be £530 5, on the 15th December, 1803; Edwards having surrendered himself and his property, and submitted to examination, received a certificate of discharge on the 26th January, 1804. According to the act of the Congress .of the United States.
In September, 1812, Coleman sued a scire fa cías;, on his judgment; John Edwards pleaded his discharge under the commission of bankruptcy, and that being found, the judgment was given for him; Amos Edwards pleaded nul lid record; and the dis? charge of John Edwards; his plea of John Edwards’ discharge was disallowed; on nul tiel record, the judgment was for the defendant; Coleman sued a writ of error, and the judgment was affirmed in May, 1816.
In March, 1817, Coleman sued another scire facias on his judgment; John Edwards again pleaded his discharge under the commission of bankruptcy, and his plea was again allowed. Amos pleaded also that discharge; this plea was disallowed; he pleaded, nul tiel record; and on that, judgment was given against him; he had previously moved to quash the scire facias, because it had issued after five years and without leave or motion: 3rdly. Amos pleaded that the scire facias had not issued until after five years had expired from the rendition of the judgment; upon demurrer, it was held to he no bar, and finally judgment on the scire facias was given against Amos Edwards, not for execution to issue on. the original judgment, but for the sum of £1010 5, *569 and $S 26, tlie damages and costs in said scire facias mentioned, and cost of the scire facias; from this judgment Amos Edwards appealed; hut upon the assignment of errors, the judgment was affirmed in April, 1820.
Edwards’ bill aSainst m<in'
Coleman’s answer'
Coleman having issued his execution for* the whole amount of the judgment in the scire facias, without any credit for £347 7 9; paid and acknowledged in the agreement of September, 1801. Amos Edwards in August, 1821, exhibited his bill for relief, grounded on the agreement of 1801, as an equitable discharge of him, relying on the ability of John Edwards to have satisfied the balance, if any due, but for that agreement and indulgence, and the unjust proceedings of Coleman, by taking advantage of a temporary absence of John Edwards from the State, for suing out the commission of bankruptcy, and his proceedings thereunder as one of the commissioners calling for an account of the proceeds of the estate surrendered, charging ‘the other payments and credits; relying also, that but for the agreement of 1801, he might have been released from the judgment as bail, but that the writ of error with supersedeas, was abandoned in consequence of the agreement of 1801. By an amended bill, he charges that the defendant did at the time of executing the agreement, of 1801, also execute to him a written release, which by time and confusion of removing from Bourbon to Logan he had lost; and alleges other goods received at the Washington and. Paris stores, oyer and above the £347 7 9.
The defendant admits the agreement of 1801, and the receipt of the sum therein mentioned, paid at the time in goods received of John Edwards out of a store claimed by complainant, and by him paid, out of “that very store at Paris;” he denies any release was executed to the complainant as alleged in the bill; denies any fraud in obtaining the commission of bankruptcy, or in his acting under it; says the procceeds received from the estate were applied and exhausted in the expenses of the commission, except some lands which were purchased in for the benefit of the creditors, but for which nothing has *570 been received, as they were greatly interfered with by other claims; that lie has not received any divi-den(j as a creditor under said commission; denies that he is bound to account for the proceedings under it in this suit, and denies any other receipts by him except the ¿347 7 9, and that it includes the receipts by him of goods from the stores at Washington and Paris; he relies on the length of time as a reason why the court ought not to compel him to a specific execution as to the mode of payment according to the agreement of 1809.
Case stateil, as made by and Ijiroofs.1°S
In June, 1823, the injunction was dissolved, with ten per cent, damages, on the whole amount of the judgment, afterwards, at the September term, on the motion of the defendant Coleman, and it appearing that the sum of £347 7 9, had not been credited on the judgment on the scire facias, and not noticed in the order at the former term, dissolving the injunction, it was ordered that the said sum paid on the 1st of September, 1801, be credited on the judgment on scire facias, and endorsed on any execution that may issue. Upon a final hearing, the court in 1826, again dissolved the injunction with ten per cent, damages on the amount unpaid, and dismissed the bill with costs, to which Amos Edwards prosecutes this writ of error.
By the agreement between Coleman and Edwards, of 1801, the right of Coleman to proceed against Edwards, was suspended until three months a^er ^le decision of Vertner’s suit. But moreover Coleman agreed to give three month’s notice to John Edwards of the decision, and receive any balance due, after allowing all just credits, discounts and set-off against Wood, in the manner agreeable to the covenant on which the judgment had been obtained.. To this new covenant and mutual agreement, Amos Edwards the mere security in the judgment, is no party. There was not a formal release of the judgment it is true. But what did Coleman’s claim in equity and good conscience stand on after the execution of this new agreement? On this agreement, not on the judgment at law. Coleman expressly covenanted to allow credits, set-offs *571 ttncí discounts against Wood the assignor, and to receive the balance according to that contract. The judgment was for damages for breach of covenant; this new agreement was a novation, the introduction of something new, and different from the judgment, that was payable in money; this in something other than money, agreeable to the manner of the original covenant which had been merged in the judgment. It was an equitable waiver of the judgment, and a reinstatement of the old contract, subject to all “credits, off-sets and discounts which he (John Edwards,) may bring forward against his contract with Wood.” For a new consideration expressed in this agreement, of 1801, Coleman agreed that his demand should stand upon the footing of the original contract, not upon the judgment. Coleman agreed “not to take any advantage of said Edwards,” but to receive the remainder that may be due him in manner and agreeable to the contract” between said John Edwards and Wood, “after having given said Edwards three months previous notice,” &c. Taking the previous recitals of this new agreement respecting the judgment, the writ of error and supersedeas pending, in connexion with these new stipulations, “not to take any advantage of said Edwards,” to allow all just “credits, off-sets and discounts,” and “to receive the remainder that may be due him in manner and agreeable to the contract” between Edwards and Wood; and it does seem to have been the intention to give Edwards the full benefit of a reversal of the judgment, which was the object of the writ of error, and to do more, to give Edwards further time of three months to pay in commodities after the manner of the original contract. The parties had not the original contract that was filed with the judgment, they refer to the records for that contract.' They seem to have intended to do away the judgment and writ of error, the bones of contention between them, and to unite their efforts against Yertner’s suit, leaving the matter as between Edwards and Coleman to stand upon the old contract between Edwards and Wood, enlarging the time for performance to three uponths after notice, of the final determination of *572 Vertner’s suit. To obtain this indulgence, Edwards paid Coleman at the time, £34*1 7 9, in gooods, when Vertner obtained a restraining order Vn his suit against Edwards and Coleman, so that if Vfertner liad succeeded, this payment would have been no credit against Vertner, nor would this novation have been binding on him.
Remedy of tia! fincTai H»pineip.,.
Agrocmont Edwml/iind Coleman not h. defence to the sare fa-ihebinl'X mosEdwat-Js.
An agreement between principal creditor jn a judgment, in con-slclera,tion ot ment, aricfthe dismissal of a writ of cr-persedeas11' then pending, that the bal-lince of the judgment, af- and discounts, would be re-commodities after the de-’ termination .oi'.ce!'!:am notice1 o” am three months. is„a release of the bail in equity,
*572 These new risqnes, Amos Edwards was not bound. to incur by his station as security in the original judgment. As bail with the judgment confirmed against him, the law gave him a very efficacious remedy against the estate of his principal, by motion for attachment, upon which the estate was to be seized and sold as upon a fieri facias, and out of the money such judgments and costs to be satisfied, together with costs, of the attachment, (1 Litt. laws, 494, sec. 12.) Suppose the bail had moved for an attachment against the estate of the principal, after the writ of error was abandoned, and upon such motion, this new agreement had been produced, for what should the court have granted tiie attachment? It must have been denied to the bail, becausfe the creditor had thus converted his demand into an uncertain amount, depending on set-offs, and discounts and credits, is against Wood, payable moreover in commodities.
Tora scire facias upo.n thd judgment, the allowances against Wood contemplated in this new agree could not have been pleaded. In proceeding by scirs facias on the judgment, Coleman did take an advantage contrary to the spirit and intent of the agreement, as well as in proceeding, without having given the notice of throe months stipulated for. In liis petition and affidavit for tiie commission of bankruptcy, he .slated bis debt at £530 5; he so proved it under the commission. In his scire facias lie gives no credit, but obtains judgment for the whole amount of the original judgment, without any predit given; he proceeded until after the dissolution of tiie injunction, and then he reduces his demand only by £347 7 9, not to £530 5, as proved under the commission.
By the agreement of 1801, Coleman suspended his demand against John Edwards the principal. *573 until after the decision of Vertner’s suit, and three months notice given, he converted into a demand payable in commodities, depending for amount upon set off, discounts and credits against Wood, in the mean time he sues a commission of bankruptcy against the principal, and he has obtained his discharge from the demand. After all this, and proving his demand under the commission at £530 5; lie has proceeded without any notice according to the agreement of 1801, not for £530 5, but for the judgment of £1010 5, and at last has given a credit of £347 7 9 only, leaving the sum of £662. 17 3, with damages twice given on the order dissolving the injunction, and again on the final decree pronounced.
Rule given and cases ci" íeaso^f’suíety by the a-greemenis of ^“to/and creditor in law and e-q-uity-
It is useless to pursue the question, as to the amount really demandable as against the principal, under the terms oí the agreement of 1801, or as to the accountability of Coleman for the lands purchased in for the benefit of the creditors, under the commission of bankruptcy. The principal has received his discharge as a bankrupt, was therefore acquitted as dependant in the scire facias, and we are of opinion that Amos Edwards, the bail, and as such, the party bound only as security in the judgment, is in equity released.
By the agreement of 1801, the writ of error with supersedeas was abandoned, the judgment suspended, if not released and vacated, the situation of the hail was changed very materially, the time for payment enlarged, and his risque increased.
The subject of equitable release of the surely, by an agreement between the creditor and the principal, without the concurence of the surety, was so fully discussed in the cases of Norton &c vs. Roberts, and Latham, adm’x. and Haney &c. vs. Crabtree, decided by this court, tliat it is not necessary to say more on the general doctrine, in the first case the principles are defined upon which the release of the surety depends; in the other, the release by so changing the condition of the surety, is deckled to bean equitable, not a legal defence. In the present case, the court have no doubt that the *574 agreement of 1801, lias worked an equitable release of Amos Edwards the bail. The only doubt is, whether, from the terms of that agreement, the judgment at law was not so far abandoned and vacated, as that the agreement might have been pleaded by the hail to the scire facias. However that may be, it is clear from the record of the scire facias, that was not used, attempted, nor adjudicated there. That it is an equitable release, we have no doubt, and it was more prudent to apply to a court of equity to exercise its powers in a subject unquestionably belonging to its jurisdiction, than to have attempted a doubtful defence in a court of law.
It is no objection against the release of the bail or other surety, that he is ix subscribing witness to the new agreement relied on as the no-vation.
But it has been argued that because Amos Edwards the bail, is a subscribing witness to this new agreement, that therefore, he is not in equity to be discharged. That Amos Edwards was informed of the agreement is certainly true, he assisted to deliver the goods receipted for. But it is equally certain, that he was not asked to be party, to be bound to guaranty the performance of the new agreement, on the contrary he was expressly told by Coleman, that he was released; the depositions of John Edwards and Leonard White, are positive that Amos Edwards was told by Coleman, that this agreement was to be a release of him; the deposition of John Edwards is positive, that a written release was at the same time executed and delivered by Coleman to Amos Edwards, and White also states that such a written release was executed, although he does not state that so positively as he does the declaration of Coleman to Amos Edwards, that he was released. The answer does not pretend that Amos Edwards consented to be bound longer; no evidence conduces to prove such a fact. The very article of agreement between Coleman and John Edwards, then signed and sealed, repels the idea that Amos En wards consented to be boun.d for the performance of the new agreement. He was present and called on as a subscribing witness. By the very fact of his being called to attest the agreement as a witness, his disinterestedness in the subject, is attested. Had lie been consenting to continue his *575 liability as bail, and to remain as a guaranty, under the terms of the new agreement, then he ought to have been called to subscribe ns an obligor, not as a witness. The cases where a subscribing witness has been decreed to release his interest in the subject matter, by suffering an innocent purchaser to contract, without disclosing the claim of the witness, bear no analogy to.this. Albos Edwards had nothing to disclose, nothing to conceal. That he was bound as bail, was as weil known to Coleman as to the bail. Coleman told him he was released by this new agreement; it would be so in equity, unless Amos consented to become party to the new agreement, or expressly assented to continue his responsibility, and to incur the additional hazard growing out of the agreement. When called to witness the agreement which he was told was to release him, and which in equity would release him, what moral duty required of Amos Edwards to object to his release as bail? It would be strange if the subscription as a witness, who was bail, to an obligation between creditor and principal, operating as a release of the bail, should convert him into the ob-ligor instead of the witness, and curdle and concrete his release and attestation, into an obligation. A surety may well assent to and attest an instrument which expressly or impliedly operates as his release. The doctrine of the courts of equity is, that the surety is a guarantee for performance of the- principal according to the terms, conditions and stipulations of the undertaking for which he became bound. The surety is bound by the terms of his contract, and if the creditor by agreement with the principal debtor, without the concurrence of the surety, varies these terms, by enlarging the time of performance, the surety is discharged, for his risque is increased and he is injured.
To prevent the surety duchar1-^ bv the novation with the pm-theeurety6!? not sufficient, he must consent to re-' main bound.
*575 To prevent the discharge by such new agreement, the surety must concur. It is his concurrence which binds him by the terms and increased risque of such new contract. His concurrence bound him by the terms of the old contract, his concurrence must bind him by the terms of the new, If is not enough to hind him, that he is inform *576 ed, and is passive, he is not required to object, or protest, he must actively concur, and consent to be bound by the terms of the new agreement. This is the true principal extracted from a great number of decisions. (See King vs. Baldwin, 2 John. ch. ca. 559; Ludlow vs. Simond, 2 Caine’s cases in error, 1; Deming vs. Norton, Kirby’s reports, 397; Walsh vs. Baillie, 10 John. 180; Rathbone vs. Warren, 10 John. 587; Burn vs. Poaug’s adm’r. 3 Desaus. chan. rep. 604; Rutledge vs. Greenwood, 2 Desaus. ch. rep. 389; Butler vs. Hamilton, 2 Desaus. ch. rep. 230; Commissioners of Berks vs. Ross, 3 Binn. 523; 6 Binney, 295, and Norton vs. Roberts before cited.)
Surety discharged.
This case is one of the strongest in favor of the discharge of the surety, that can well be presented short of formal, express and legal release. It is said that the principal and surety were father and son: true. But that does not alter the equity of the case, nor lessen the forqe of the circumstances. Although the son, then a young man, may not have been prudently cautious in exacting and putting on record an exoneratur; yet it well consists with the duty and prudence of a father then in declining years, and in hazardous circumstances, (as the answer insists, and after events verified,) so to frame his new agreement of 1801, as to protect his son from being involved in alarge debt as bail, which the father insisted was unjust, and which judgment he was seeking to reverse. We think such is the equitable effect of it, according to the agreement 1801, by giving notice, and requiring performance in a manner agreeable to the covenant between John Edwards and Wood, subject to discounts, set-offs and credits. Joins Edwards had received his discharge as a bankrupt, and Amos Edwards was no party to the agreement of 1801; so that had Amos been sued by Coleman on the agreoment of 1801, Coleman must have failed in his suit, for Amos was a witness only, not an obligor. In suing a scire facias on the judgment, Coleman did take an advantage, contra: y to the spirit and equity of the agreement of 1801, for credits, discounts and set-offs against Wood the assignor, anterior to the judgment. *577 were not pleadable to the scire facias; the question as to three months notice of the decision of Vertner’s suit was precluded and the whole effect of that agreement evaded. The surety, Amos has come into equity to obtain his discharge resulting from that agreement between the creditor and the principal, without the concurrence of the bail, to be responsible under the very important change of risque from that of his original undertaking and liability and remedy as bail.
Decree and mandate,
Crittenden and Chinn, for plaintiffs; líaggin, Monroe and Wicklifle, for defendant.
It seems to this court, that by the agreement of 1801, between the creditor and the principal, the bail against whom the judgment was confirmed, was discharged in equity, because of the enlargement of time and manner of performance, and the increased risque of the surety, resulting from that agreement, so made without the concurrence and consent of the surety to be bound by the novation. It is, therefore, ordered and decreed, that the orders aucl decrees of the circuit court for dissolving the injunction with damages, and for dismissing the bill with easts be set aside, reversed and annulled; and that the case be remanded to that court, with direction .to take such orders and decrees as are proper and required by the principles of this opinion, and the former orders and decrees dissolving the injunction, and finally, to perpetuate the injunction against proceeding on the judgments at law, with costs.
Plaintiff in this court, to have his costs.