### THOMAS B. SMITH v. WILLIAM H. CLOPTON, Ex'r.

1. ESTOPPEL—BILL SINGLE UNDER SEAL.—A party bound as principal upon the face of a promissory note under seal, is not thereby estopped to plead that he signed the instrument as surety for his co-obligor, the statutes of this state having so far modified the common rule applicable to sealed instruments, as to let in the proof of the fact.

2. STATUTES—CONSTRUCTION—PRINCIPAL AND SURETY.—Article 1, chapter xlvi, Rev. Code, 1857, includes all the modes and instruments by which suretyship may arise or be created, whether bound by seal or simple contract.

3. PRINCIPAL AND SURETY—DISCHARGE.—The failure of a creditor to commence and prosecute legal proceeding against his principal debtor after notice given him by the surety, discharges the surety, and the creditor is barred of all recovery against him.

4. PRINCIPAL AND SURETY—DISCHARGE.—The bar provided for by statute against a creditor failing to commence and prosecute legal proceeding against his principal debtor, after notice given by the surety, is a legal discharge of the surety quite as effectual in a court of law as in equity.

5. Principal and surety—defenses—equitable and legal.—It is the suggestion of enlightened reason, that, whatever defenses may be established and availed of by a surety in a court of equity against the collection of a debt, may be averred and proved in a court of law.

6. Principal and surety—notice to sue.—A plea by a surety that, after maturity of a bill single upon which he was really, thought not nominally, bound as surety, and while the principal was good and responsible, he verbally notified the creditor to collect by law at once, or he, the surety, would be no longer bound, and that the creditor accepted the notification and promised compliance but failed, is a good defense, under the statute, to a suit subsequently brought against the surety.

7. Principal and surety—payment.—The taking by a creditor from the principal debtor, subsequent to the maturity of the debt, of a trust deed upon personal property sufficient to pay the debt, and the sale by the trustee of that property for an amount equal to the claim, is a payment as to the surety.

8. Principal and surety—release of surety.—If the principal debtor, after maturity of his debt, execute in favor of his creditor, without the knowledge or assent of the surety, a deed of trust upon personal property sufficient to pay the debt, and without such knowledge or assent on the part of the surety, time is extended by the creditor to the principal in consideration of such deed, the surety is released.

9. Principal and surety—discharge.—The mere taking by the creditor from his principal debtor, because of the verbal notice from the surety, of a deed of trust upon sufficient personal property to pay the debt and others, does not discharge the surety.

Error to the circuit court of Lee county.  Boone, J.

William H. Clopton, as executor of the will of James H. Houghton, deceased, brought suit in the circuit court of Lee county against Thomas B. Smith, alone, upon two joint and several bills single, under seal, drawn by W. S. Ashly and Thomas B. Smith in favor of Houghton, both dated May 12, 1867, and payable October 12, 1867, the first for $500, and the latter for $20.85. Both bills or notes are framed in the usual formula, "we or either of us," and contain on their face no special expression beyond their legal import of the relation either maker bore to the notes, or to each other, whether as principal or surety. The larger note states that it was given for borrowed money.

There were filed five pleas in bar, all of which allege that the notes were made by Ashly, as principal, and by Smith, as surety, and that Houghton, the creditor, knew it.

The first plea sets up that in January, 1868, after

maturity of the notes, and while Ashly was good and responsible, Smith verbally notified Houghton to collect by law at once, or he would be no longer bound as surety, and that Houghton accepted the notification and promised compliance, but failed, and Ashly became insolvent.

The second plea recites the facts contained in the first, and specially adds thereto that after the former notification, viz., in February, 1868, Smith inquired of Houghton if he had complied with the notification, and Houghton replied he had been fully secured by Ashly, by deed of trust on property, and now no longer looked to Smith, who was released. It is also averred that Houghton did not sue, nor collect by law or otherwise, and that Ashly has become insolvent.

The third plea states that, on the 10th of February, 1868, at the instance of both Houghton and Smith, and to secure the one and indemnify the other as surety, Ashly executed to S. G. Watkins, as trustee, a deed of trust, with power of sale, upon sufficient property, which was duly sold by the trustee under the deed in February, 1869, for a sum sufficient to pay off the trust debt and expenses; and so concludes that the debt was paid by Ashly, the principal.

The fourth plea states that on the 10th day of February, 1868, in consideration that Ashly, the principal, then executed a deed of trust to Watkins, trustee, on sufficient personal property to secure the debts sued on, and others that day contracted, with power to sell, November 1, 1868, the maturity of the new debts, Houghton, the creditor, without the knowledge or assent of Smith, the surety, extended time to Ashly, the principal, upon the notes sued on, till the said 1st day of November, 1868.

The fifth plea states, in detail, that, after maturity of the notes sued on, on 10th February, 1868, and because Smith, as surety, had theretofore verbally noti-

fied Houghton to proceed to collect by law of Ashly, the principal, the debts sued on, Houghton procured of Ashly to then execute to Watkins, trustee, a deed of trust on sufficient personal property to secure payment of the debts sued on, and of others mentioned in the deed, amounting in all to $839.90, with power of sale, by maturity of the new debts, November 1, 1868, if any should then remain unpaid; that, at said last named date, all the debts remained unpaid, and the property conveyed was then and long afterwards of value sufficient, if then sold, to pay off all the trust debts and expenses; yet that the plaintiff omitted to cause a sale to be made until February, 1869, when one of the horses conveyed in the deed, of the cash value of $368, then sickened and died, and so was lost to the trust fund; by reason of which the proceeds of sale of the the balance of the property was insufficient to pay all the trust debt and expenses, and were applied by plaintiff to the payment of the trust expenses and the other secured debts, leaving those sued on wholly unpaid, and that Ashly has become, and now is, insolvent.

To the third plea the plaintiff replied, that after execution of the first deed, viz.: November 5, 1868, the trust property was seized by Kendrick, sheriff of Monroe county, under a distress warrant, at the suit of Mrs. M. A. Oldshue v. Wm. S. Ashly, and on the same was recovered by Watkins, as trustee, by a writ of replevin, both of which suits of distress and replevin are pending in Monroe circuit court; that, after replevying, Watkins, trustee, duly sold the property at public auction for cash, and that at the sale the roan horse, Wade Hampton, was knocked off to plaintiff, Clopton, at $358; that Clopton, discovering that the horse was sick and in a dying condition, refused to take him and pay his bid; that the horse did soon die; that the balance of the trust property brought only $605.50, of which $97 were applied to trust expenses, leaving $508.49, which the

trustee retains in his hands to abide the result of the aforesaid suits. To this replication the defendant demurred.

To the first, second, fourth and fifth pleas the plaintiff demurred, assigning among other causes, that the notes were under seal and the defendant was estopped to make any averment of suretyship, the notes being silent on the subject and imparting a liability as principal; and that there was no averment that the notice given was in writing and given thirty days before the succeeding term of the court.

The demurrers to the pleas were sustained; defendant's demurrer to plaintiff's replication was visited upon the third plea and sustained, with leave to plea over, which being declined, judgment final was rendered for the plaintiff.

The article of the Revised Code of 1857, referred to in the argument and pleas, is as follows: "Any person who is or shall be bound as surety, or accommodation indorser for another, may, at any time after the debt has become due, or liability been incurred, give notice in writing to the creditor to commence and prosecute legal proceeding against the principal debtor, if living and resident within this state, for the recovery of said debt; and if such creditor shall fail to commence such legal proceeding, by the next term of the proper court in which suit can be brought, to be held after the expiration of thirty days after the giving of such notice, and to prosecute the same to effect, the surety who shall have given such notice, shall be discharged from liability, and the creditor shall be barred of all recovery against him." Chap. xlvi, art. 1.

*Sale & Dowd,* for plaintiff in error.

I. The first and second pleas set up the defense, provided specially by statute (Rev. Code 1857, p. 362, art. 1), of a notice to the creditor to commence legal pro-

ceeding against the principal debtor, and his failure to do so. The notice was verbal, though required by the statute to be in writing; but the allegations of the pleas show a far more decided waiver of the writing than that disclosed in Taylor v. Davis, 38 Miss. 393. The demurrer to the second plea, in one of its grounds, mistakes that plea as setting up a verbal release of Smith from the debt, whereas the facts alleged are plainly introduced to strengthen the former showing in the first plea, of a waiver by the creditor of the notice to sue being made in writing.

The case of Bridges v. Winter, 42 Miss. 135, does not in the slightest degree conflict with Taylor v. Davis. That was simply a case of mere verbal notice, without any pretense of a waiver of the writing; and neither such waiver, nor any allusion to the well-considered case of Taylor v. Davis, in 38 Miss., was even hinted at by court or counsel.

II. The defense disclosed by the third plea is, that the debts sued for were paid in full by a sale of the personal property of the principal debtor, conveyed in trust to secure them.

The replication to it says that part of the trust property, to wit, the horse "Wade Hampton," bought by the plaintiff, Clopton, for $358, was sick at the time, and soon died, and the purchaser declined to take it and pay the bid; and the proceeds of sale of the balance, after paying the trust expenses, are yet retained by the trustee to abide the result (in the circuit court of Monroe) of a distress warrant previously levied on the property by the sheriff at the suit of Mrs. M. A. Oldshue, and of an action of replevin against the sheriff by the trustee, in which the latter recovered possession of the property, and afterwards sold it under the deed.

Defendant's demurrer to this replication questions its sufficiency on these grounds, viz.:

1. The sale being by a trustee, there could be no

binding warranty of soundness as to the horse " Wade Hampton," and none is alleged, nor any fraud by the trustee in that behalf. Nor could the trustee commit any fraud which would affect those whom he represented. George v. Bean, 30 Miss. 147; Storm v. Smith, 43 Miss. 501, and other similar cases. Nor could the fraud of a trustee (the agent) upon the *cestui que trust* (his principal) injuriously affect the rights of Smith, the surety of the debtor.

2. Clopton, the purchaser and debtor for the price of the horse, being also the creditor of the trust fund, and thus incompetent to litigate in law the question of his own indebtedness to his own agent, the trustee is by law chargeable with the amount as cash, as far as the rights of third persons are, concerned. Childress v. Childress, 3 Ala. 752; Duffie v. Buchanan, 8 Ala. 27; Purdom v. Tipton, 9 Ala. 914; Stevens' Adm'r v. Gaylord, 11 Mass. 256; Winship v. Bass et al. 12 Mass. 200, 201, 203, 204.

Our statute (Rev. Code of 1857, p. 441, art. 74) expressly charges the executor with his own debt, as cash, upon the indebtedness, if disputed, being established by the verdict of a jury. In this case, the plea proposed to submit the fact of that indebtedness to a jury.

3. As to the proceeds of sale of the rest of the trust estate, if they were improperly retained by the trustee (the agent of Clopton, the executor and creditor), that will not be allowed to operate injury to the interests of an innocent party (Smith) who has no control over the agent, who is not legally responsible to him. The receipt of the money by the agent and trustee is the receipt of it by his principal, the creditor.

III. The fourth plea sets up extension of time by the creditor, Haughton, to the principal debtor, Ashly, after maturity, upon a valuable consideration specified in the plea, without the consent or knowledge of the surety, Smith. If the fact of the suretyship of Smith lawfully

appears, either in the pleadings or on the proof, the sufficiency of this plea, both at law and in equity, is not understood to be questioned.

IV. The fifth plea sets up both *laches* and malpractice on the part of the creditor, to the injury of the surety, in the management and appropriation of the proceeds of a trust estate expressly dedicated by the principal debtor at defendant's instance, to the payment of the debts sued for, and to the indemnification of this defendant as surety.·

That all the above defenses will prevail in equity, see the following among many authorities: Burge, 203–4; Theobald, top, pp. 75–6–7; Nisbet v. Smith, 2 Bro. Ch. 579, and notes; Dubuisson v. Volkes, 30 Miss. 432; 1 Story Eq. § 325; King v. Baldwin, 17 Johns. 384.

And if good in equity, they are equally good at law, if the facts may be there made to appear. See People v. Jansen, 7 Johns. 332; Pain v. Packard, 13 Johns. 174; King v. Baldwin, 17 Johns. 384, *supra;* Gahn v. Niencewicz, 11 Wend. 17; Boston Hat Manufacturing Co. v. Messinger, 2 Pick. 232–3–4–5; Hunt v. Bridgham, ib. 581; Baker v. Briggs, 8 Pick. 122; Harris v. Brooks, 21 Pick. 195; Carpenter v. King, 9 Met. 511; Bank of Steubenville v. Carroll's Adm'r, 5 Ham. 207; Same v. Hoge et al., ib. 17; notes to Birkmyr v. Darnell, 1 Smith. Lead. Cas. (ed. 1866), 478–9; notes on Doe v. Oliver, and the Duchess of Kingston's case, 2 Smith Lead. Cas. (ed. 1866), 707–8–9–10; and all the Mississippi cases upon the question, which see collected in George Dig., title, "Principal and Surety."

In this action at law, should the foregoing defenses, or any of them, have been allowed on demurrer to the pleas, notwithstanding the cause of action is what is called a "sealed instrument," and does not upon its face express either the suretyship of Smith or the contrary?

We maintain that they should, and insist that upon this theory are united the better reason, the better authorities, good legal policy, and the plain provisions of our statutes.

The only adverse case we have found in this state is that of Willis & Conley v. Ives, 1 S. & M. 307, decided in 1843, and which denies at law the defenses set up in the 3d, 4th and 5th pleas, while it does not profess to apply to nor in any wise affect the 1st and 2d.

It will be understood that the trouble in allowing to the surety in an action at law upon a sealed writing, all the defenses he might rely upon in equity, is to there get at the fact of his suretyship. If that fact be legitimately disclosed, either by the pleadings or proof upon either side, all the modern authorities let in the defense.

1. In the case at bar the fact is distinctly admitted by the legitimate effect of the demurrer to each plea. The case of Willis v. Ives was confessedly founded upon and identified with that of Sprigg v. the Bank of Mount Pleasant, 10 Pet. 257. In the latter case the plaintiff replied as an estoppel, that defendant by his bond has expressly obligated himself " as a principal;" and the defendant demurred to the replication. The opinion of the court was prepared by Justice Thompson, the same judge, who, as chief justice of the supreme court of New York, had formerly delivered the opinion in the case of the People v. Jansen, 7 Johns. 332, where he held the defense pleaded to be good at law, because in that case the suretyship of defendant appeared on the face of the bond. He also recognized and adopted, in *totidem verbis,* the ruling of the same court in Pain v. Packard, 13 Johns. 174, while he was yet chief justice of the supreme court of New York, the very first line of which distinctly declares that the facts of the plea are admitted by the demurrer; and thereupon the court there proceed to apply the defense allowed in the

People v. Jansen, where the fact of the suretyship appeared on the face of the bond. In the same case, 10 Pet. 267–8, Justice Thompson, on this point, carefully refers to and recognizes but distinguishes the important case of the Bank of Steubenville v. Carroll's Adm'rs, 5 Ham. 207, which is here submitted as strictly parallel to the case at bar in every essential particular.

And yet, strangely enough, Judge Sharkey misconceives the supreme court, to intimate, that the proper course is for the plaintiffs to demur to the plea. Where even an intimation to that effect exists, we are unable to find in the case; nor can we conceive it possible the idea could be entertained by the supreme court judge, who had just then admitted and recognized directly the contrary. It certainly cannot be derived from page 264 of the opinion, where (and where alone) the question is alluded to, and only for the purpose of pronouncing it " unnecessary " to be inquired into; and the reason given for its being thus unnecessary, is that the bond, which was already set out in terms by the plea, thus affirmatively disclosed upon the record as matter of estoppel, the fact that all the obligors had expressly bound themselves " as principals." The invalidity of the defense having been thus first exposed in the plea itself, that member of the pleading must fall first, under the demurrer to the replication, even if the latter had been itself defective.

If this emphatic waiver of an inquiry into the question may be construed to assume the dignity of even a *quære* (as it certainly does not rise to that of an intimation), it was effectually emasculated as such by the subsequent part of the opinion above quoted.

Of course we do not deny that generally a demurrer only admits the facts demurred to, for the sake of the argument. That is, it virtually says : " Even admitting the facts as you state them, they constitute no valid defense in law." But in this peculiar instance

it necessarily goes further. This case is *sui generis* in this particular. Here, it is conceded on all hands that if the fact appears on the record in any proper manner, its sufficiency in law is unquestionable. The demurrer admits the facts, and is then unable to deny their legal validity. The result is inevitable. The demurrer must fail. The plea must prevail.

And this is the doctrine of the cases cited and approved in 10 Peters, which in turn is the basis of Willis v. Ives. It is the doctrine of reason and of true principle in pleading.

Is it not legal mockery, to say a defense is valid at law if the facts shall be put on the record, and close every door to the introduction of those facts in any way?

Good legal defenses are set up in the first, second, fourth and fifth pleas. They were admitted by the demurrer, yet the demurrer was sustained as if the defense were invalid.

A good one was presented by the third plea. It was confessed by a special replication, and avoided. Yet a demurrer to the latter was applied to the good plea.

A defendant has no other means of getting the facts upon record, however valid the defense they may constitute when there.

2. But we insist that in this and all like cases, the fact of suretyship is provable at common law, and the court should have required an issue, or given judgment for the defendant on the demurrer. No part of the record discloses any estoppel (as in the case in 10 Pet.), by which defendant waived his suretyship, for a valuable simultaneous consideration passing to his friend, and expressly assumed to be bound "as principal." Here it is not the seal which is clothed with superior sanctity. Had this written contract contained such express waiver of suretyship and assumption of the character of principal, even without a seal, it could not be verbally disproved, either at law, or in equity, in the absence of fraud,

accident or mistake.   Nay, even if it were a verbal con-
tract, for a present consideration, defendant could not
avoid his liability as principal debtor, in either form,
by setting up a defense founded on the fact that the
loan was really for the benefit of another.   We refer the
court to the same case (in equity) of Sprigg v. the
Bank of Mount Pleasant, 14 Pet. 206, *et seq.*

The only rule of evidence guarding the plaintiff's
rights in this connection, is one which appeals alike in
behalf of all written contracts, sealed or unsealed, and
equally in every form, to wit: They shall not be varied
or contradicted, nor the obligation of the promisor or
obligor, to the promisee or obligee, lessened by verbal
proof.   In every joint, or joint and several promissory
note, all the makers are, as to the payee, principals,
unless the contrary be expressed; and in a suit upon it,
in law or equity (in the absence of fraud, etc.), they
cannot vary or lessen their liability to him, as such, one
iota, any more than in a case of a bill-single.   If there
be any estoppel, or *quasi* estoppel, in either case, it is
as to the extent and obligation of that liability to him,
and is operated by the inviolability of the writing, and
not of the mere seal.   This statement is indisputable
as to promissory notes; and yet, if among themselves,
some of the makers of a note really hold toward one of
them the relation of sureties, the law gives to them
certain rights as such, which, if knowingly violated by
the creditors, will discharge them altogether, or in part,
as the facts may be.

If the mutual relations of co-makers and co-obligors,
among themselves, could not be inquired into verbally
because of the estopping import of the writing or the
seal, which alike imply their liability to the holder as
principals, how else could their right to reimbursement
by the principal be enforced; or how else could they
defend themselves in his suit against them for contri-
bution as co-principals?   In either case, resort is neces-

sary, by the plaintiff in such suit, to the original paper, sealed or unsealed, to fix the primary liability. In such a suit, that writing or that seal could no more be varied or contradicted by parties to it, than in any other proceeding upon it. It would rest upon whatever of dignity it ever claimed, the same as when first brought to the bar by the payee or obligee against the makers or obligors.

And even when the note or bill single shall have been merged into a judgment of record upon it—a grade of evidence higher and more inviolable, and creating a more invincible estoppel than all others—then, although all the defendants are by the judgment itself made principals, the real sureties among them have the right, nevertheless, to defend at law against an action of debt on the judgment, or in equity by injunction against a *fieri facias* on it; or to enforce mutual rights amongst themselves, the same as in case of mere promissory notes. Harris v. Brooks, 21 Pick. 195; Carpenter v. King, 9 Metc. 511; Bank of Steubenville v. Carrol's Ex'rs, 5 Hamm. (Ohio) 207; Same v. Hoge, 6 ib. 17; People v. Jansen, 7 Johns. 332; Pain v. Packard, 13 ib. 174; King v. Baldwin, 17 ib. 384; Gahn v. Niemcewicz, 11 Wend. 312, 317; 1 Smith Lead. Cas. 478, 479, in notes to Birkmyr v. Darnell, ed. of 1866; 2 ib. 708, 709, 710, note to Dor v. Oliver and Dutchess of Kingston's case; Mattock v. Gibson, 8 Rich. (S. C.) 437; Cave v. Burns, 6 Ala. 780.

Judge Shaw, in 9 Metc., most clearly demonstrates, by argument and illustration, that the suretyship of one of the parties "is a fact collateral to the contract and no part of it."

3. But the defenses set up by two of the pleas are allowed at law by the express letter of our statute, passed for that purpose; and those presented by the other three are admitted by the spirit and legislative policy plainly manifested in other statutes of the old

code (and re-enacted into that of 1871, to which we will presently refer).

We have seen that the defense submitted by the first and second pleas, is expressly provided by the Rev. Code of 1857, p. 362, art. 1. It has uniformly been made at law, without question, and regardless of the character of the paper. The language of the act is purposely general, and comprehends all kinds of written liabilities: "Any person who is or shall be bound as surety, or accommodation indorser," etc. Under this the suretyship must needs be averred and proved by the defendant, or the act is nothing.

Will it be contended that the defense should have been excluded, if the notice to sue in this case had been given in writing, and in literal compliance with the language of the act? If not, then we say we claim no benefit from the first and second pleas, if the court be of the opinion they do not distinctly aver such a clear waiver by Haughton, of objection to the notice as given, as is in legal effect equivalent to a literal compliance with the statute.

The facts averred in the first plea, as showing the waiver, are almost identical with those in Taylor v. Davis, 38 Miss. 493. And although the notice required Haughton to sue "immediately," yet it appears from the record he did not even institute this suit against Smith himself for many terms of court thereafter; and against Ashly, the principal, never.

The facts averred in the second plea constitute a subsequent and more emphatic waiver, and disclose a defense good, both under the statute and now at common law.

In Bridges v. Winter, 42 Miss. 135, we have already said there was no waiver in the case, and no allusion to any; simply a plain violation of the statute *in toto*, without any excuse or substitute for compliance.

If the defense presented by either one of these pleas

be good under the statute, the demurrer to that one at least should have been overruled; and for this cause alone the judgment must be reversed.

The defenses propounded by the third, fourth and fifth pleas, and all other defenses and remedies (and some more) allowed in equity to one who is actually a surety (whether he be apparently one or not), are, in a proper state of the case, allowed at law by the spirit and policy, and the legal intent and operation, of all the other articles of chapter xlvi, pages 362–3, and of page 494,. article 102, of the Code of 1857. That is to say, the fullest inquiry is freely allowed as to which is the principal, and which the surety, and the prescribed legal action thereon, despite the traditional reticence and jealous prerogative of the seal, upon these questions so vitally essential to common justice and convenient relief for the parties concerned.

It will be observed that none of the foregoing statutes were brought to the notice of the court in the case of Willis v. Ives, save that one here quoted from article 102, p. 494 of the late Code ; and upon that one, judge Sharkey appears to have bestowed but slight attention, briefly disposing of it with the inconclusive remark that " this provision seems to have been designed to enable the party to reach the consideration by plea, * * * and we are not prepared to carry the statute so far as to embrace the defense assumed in this plea."

*Reuben Davis*, for defendant in error.

The notes sued on are both under seal and are joint and several. The questions involved in this case have already been decided. Willis et al. v. Ives, 1 S. & M. 307 ; Sprigg v. The Bank of Mount Pleasant, 10 Pet. 257. In all the cases referred to by opposing counsel as holding a different rule, the foundation of the actions were promissory notes, or the fact of suretyship was expressed on the face of the instruments.

The pleas allege a verbal notice, and are insufficient, not only on this account, but because they do not aver that the notice was given thirty days before the next term of the court. In Davis v. Taylor, 38 Miss. 493, this court held that the mode of. giving notice prescribed by the statute may be waived, but the reasoning of the court is feeble and illogical, and clearly conflicts with the rule applied in the interpretation of all similar statutes. It is respectfully submitted, hence, that this case has been expressly overruled by the case of Bridges et al. v. Winters et al. 42 Miss. 135, in which the court .say that a mere verbal notice was a nullity.

The plea setting up payment of the notes sued on by the sale of the trust property by Watkins, cannot be maintained; it is an attempt to plead a set-off to an action of *assumpsit* which is unknown to the law. 2 S. & M. 597 ; 6 ib. 417 ; 7 ib. 9 ; 8 ib. 349 ; 2 Caines, 36 ; 3 Johns. Ch. 575 ; 13 Mass. 237 ; 17 ib. 178 ; 12 ib. 193 ; 6 Pickering, 355.

SIMRALL, J. :

This was an action of debt on sealed notes or bills single. The defense made in the first plea was, that the defendant had signed the bills as surety, of which fact the plaintiff had knowledge, and that he verbally notified him to sue, or collect by law, which notification Haughton, the plaintiff, accepted, and promised to comply, but failed. Ashly, the principal, became insolvent.

The second plea, in addition to the above facts, avers, that afterwards defendant inquired of plaintiff if he had complied with the notification, who replied that he had been fully secured by Ashly   *   *   and no longer looked to Smith, who was released, but the plaintiff did not sue nor collect by law or otherwise, and that Ashly had become insolvent.

Bonds are not negotiable by the law merchant. Our statute, however, has been construed as putting sealed notes, or bills single, upon the footing of commercial paper. Murrell v. Jones, 40 Miss. 570; Skinner v. Collie, 4 How. 396; Lamkin v. Nye, 43 Miss. 250.

The argument most cogently urged against the pleas is, that the defendant being bound by a sealed instrument, cannot, in a court of law, be permitted to aver that he was surety, so as to set up his discharge or release by failure to sue on notice to the creditor. It is not controverted in this state that such defense may be made, where the foundation of the suit is a promissory note or other parol contract, and that if the relation which the defendant bears to his co-promisor does not appear on the face of the note or other contract, that it may be shown by proof *aliunde.* Ramsey v. Purvis, 38 Miss. 501.

There never has been doubt on the subject, where the surety sues the principal debtor for re-imbursement of payment to the creditor, or for contribution against a co-surety. It very generally occurs that the relationship between the obligors or promisors does not appear in the writing. In Edge v. Kiéth, 13 S. & M. 299, on this point, the court say: "In the action for money paid, the surety must prove the bond or other contract, and if the fact do not appear on the face of the bond itself, it must be proved by other means that the plaintiff became surety," * * etc., etc. In that case the liability was upon a bond. The statute "in relation to principal and sureties," Code of 1857, ch. 46, pp. 362–3, proceeds on the predicate that the relationship may be occult. If the surety shall make oath "that he is only surety on the instrument upon which the judgment is founded," the sheriff shall first exhaust the property of the principal. Art. 5. To give full effect to the equity and purpose of the statute (or a similar one), if the suretyship appears on the face

of the execution, it is unnecessary to make the affidavit;
the sheriff is bound in duty and may be compelled to
make the money out of the principal.    Moss. v. Agri-
cultural Bank, 4 S. & M. 726 ;. Baine v. Williams, 10
ib. 113.    Surely it does not matter, under this article,
whether the "instrnment," the foundation of the judg-
ment, be parol or under seal.    Should not the same
rendering be given the first article?    "Any person who
shall be bound as surety, or accommodation indorser,"
may give notice to the creditor to sue,   *   *   *   etc.
The words are broad enough to include every sort of
surety.    "Any person," *i. e.* all persons—bound (for
another)  "as surety"—includes all the words and
instruments by which suretyship may arise or be
created, "whether bound by a seal or simple contract."
The consequence denounced is, if the creditor fails to
sue within the time limited, "the surety shall be dis-
charged from liability, and the creditor barred of all
recovery against him."    The "discharge" is full and
complete.    The "bar" is absolute against any recovery.
It is a "legal" discharge, quite as effectual in a court of
law as in equity.    In whatever court the facts are or
may be established, where recovery is sought against
the surety, this bar shall be applied.

   If it be said that the common law would not tolerate
evidence *aliunde*, where two or more had sealed an obli-
gation to pay money, to show that one was surety for
the other, because the instrument imported that all
were principals, it might be enough to say that the
statute so far modified the rule as to let in the proof.
Indeed it was impossible to give effect to what seems
to be the manifest purpose and object of the statute, to
limit it to those suretyships, that are created by parol
contracts, such as promissory notes and bills of exchange.
To so restrict its meaning, a narrower scope and import
must be given to the language than the words ordinarily
and grammatically bear.    If the sealed promissory note

is accepted in our jurisprudence as commercial paper, with all the privileges and incidents of such paper as to negotiability, why construe this statute as depriving the surety or accommodation indorser of such an instrument, of its benefits as accorded the same party to an ordinary promissory note? The policy of the statute is wise and good. A surety, by whatever form of instrument held, ought to be permitted to demand of the creditor (on pain of his discharge), that he shall pursue a principal who is wasting his substance or who has become involved, and as against whom other more vigilant creditors are taking legal remedies. It may be said, the surety ought to pay the debt and then sue the principal. But the statute only proposes to place the burden where it naturally belongs; and, besides, the surety may not be prepared or able, without sacrifice, himself, to discharge the debt.

But is the argument sound, that such a defense in a court of law alters or contradicts the written instrument? The rule is rigid and inveterate, that parol proof shall not be received to change the instrument as written. It applies with equal force to those which are unsealed as it does to specialties. All the makers of a promissory note are, as to the payee or his assignee, co-promisors. All are equally bound to him. The statute, however, assumes that the obligors or promisors may sustain towards each other the relation of principal and surety, not expressed in the writing, and which may be shown *aliunde* when the exigency for it arises.

Courts of equity first intervened to protect the surety against such contracts to his prejudice. Afterwards, many of the courts of law in the American states gave relief to the surety by admitting his defense. As to parol contracts, it may be accepted as the American doctrine. As to bonds and other specialties, some of the courts deny the defense, for peculiar reasons appli-

cable to such instruments.   In Davis v. Pendergrass, 5 Barn. & Ald. 187, the plea was held bad, on the ground that the obligation, created by a sealed instrument, could not be discharged, except by an instrument of equal validity, and therefore the parol agreement for time was no discharge of the surety.   The court said: " The proper remedy is in equity."   Discussing the same point, Story, J., in Locke v. United States, 3 Mason, 453, " There are stubborn rules of the old law which forbid " such a defense.

It is because all the promisors or obligors are presumed to be principals, unless otherwise expressed, that it has been universally admitted that when the suretyship does not appear on the face of the contract, it must be communicated to the creditor in order to fix upon him the consequences of dealing with the principal debtor in such manner as would discharge the surety.   Without such knowledge, he may extend time by arrangement with either without release of the other.   Hollier v. Eyre, 9 Cl. & F. 1; Wilson v. Foote, 11 Metc. 285.   When this knowledge is brought home to the creditor, his conscience is bound not to put, by any transaction with the principal, the surety in a more precarious condition, or increase to him the hazards of loss.   The court of chancery regarded it somewhat in the nature of an equitable estoppel; and if the surety was or might have been injured, denied redress to the creditor, and refused to allow him to collect the debt from the surety.

In many of the states, courts of law, actuated by liberal spirit, adopted this equitable defense, without sending the surety to another tribunal, where it certainly would be meted out to him.   13 Johns. 174; 3 Comst. 446; 25 Vt. 450; Holt v. Bodey, 6 Harris, 207; 6 Ohio, 17; 4 N. H. 221.

Lord Mansfield contributed much to liberalize the administration of justice by loosening the technical

trammels of the ancient common law. Since his day the same enlightened views have more or less animated the common law courts. The whole doctrine of contribution by co-sureties has been borrowed from courts of equity, and now the redress is as complete at law as in equity. It is the suggestion of enlightened reason, that whatever defense may be established and availed of in a court of equity against the collection of the debt, whatever that court has persistently declared to be a good discharge, may be averred and proved in a court of law. Upon what solid ground of reason and policy shall it be said that if the creditor, by agreement with the principal, enlarges the time of payment, a court of law will disallow the defense; but, on the next day the surety may appeal to a court of equity, and successfully set it up. The chancellor relieved indifferently, whether the obligation was by parol or under seal. In Willis & Conley v. Ives, 1 S. & M. 318, whilst holding the plea bad, because it failed to set out the consideration for the extension of time, the court considered the question as affected by the common law principles applicable to sealed instruments. The rule is stated to be, that all the obligors are principals, unless it appear on the face of the instrument that some are sureties, and they cannot by plea be allowed to change their characters. It is further said, that in all essential features the case is like Spriggs v. Bank of Mount Pleasant, 10 Pet. 257. In that case, upon craving oyer of the bond, it was set out, and became part of the declaration. The instrument, in terms in the body of it, bound the obligors " as principals." This recital or admission estopped them from denying that that was their character. An intimation was thrown out that as all the obligors, unless otherwise expressed, were in law principals, and no averment by plea could be made to the contrary; the suit at law was then abandoned.

In 14 Peters, 204, the same case is reported on

appeal from the chancery court. The sureties in that court set up an extension of time to the principal as releasing them from the debt, but it was ruled that the recital in the bond was as complete an estoppel in equity as at law; that these parties had assumed the character and responsibilities of principal debtors, by express contract, and therefore they must continue to sustain that character to the creditor. It was further held that to admit the defense, would be to contradict the bond by parol evidence, which was inadmissible.

In Clemont Bank v. Wood, 10 Vt. 585, the recital in the instrument, which was a promissory note, was precisely as the recital in the bond, in Sprigg v. Bank of Mount Pleasant. The words were, we "each as principal, promise to pay," etc.  *  *  *  The pleas were in effect the same. The court held that the defense could not be made as it might be to a note in the ordinary form, because the promisors expressly bound themselves to the creditor as co-principals, each assuming that character, and they could not vary by averment the contract as fixed by the writing.

In Carpenter v. King, 9 Metc. 512, there had been a recovery against two on a promissory note; subsequently suit was brought on the judgment against the survivor, who claimed to be a surety. The question was, whether he could aver and prove that the creditor had told him that the principal had paid the judgment, and that because thereof, he the surety had surrendered an indemnity from the principal. It was not denied that in equity these facts would discharge, but the controversy was whether the defense could be made at law. Shaw, C. J., said, that it is very clear that proof may be made that one was principal and the other surety, and that it is not necessary so to appear in the contract. "It is a fact collateral to the contract and no part of it." "It is a collateral fact showing the relations in which the promisors stand to each other."

Deering v. Earl of Winchelsea, 2 Bos. & Pull. 270;
Harris v. Brooks, 21 Pick. 195. Nor does such proof
contradict the note or bond, the original cause of action;
*prima facie* they are equally liable, and both seemingly
principals. In the case quoted from 9 Metc., which is
of common occurrence, the note had been merged into
the judgment; by the record both were apparently
principal debtors, yet the surety was allowed to go be-
hind the judgment, and show the true relation of him-
self and his co-maker of the note. That was something
collateral to the note, and did not weaken or diminish
the joint, or joint and several, responsibity of both to
the creditor. Wyman v. Mitchell, 1 Cow. 316.

In suits at law against the principal, or for contribu-
tion against a co-surety, it never has been doubted, if
the original contract did not disclose the relations of the
parties towards each other, that proof *aliunde* could be
made.

Doubt has been started in some of the authorities, as
in Baker v. Briggs, 8 Pick. 128, whether, in suit against
all the promisors, the surety can set up such separate
defense. That doubt is solved in 38 Miss. 501. Most
of the cases to be found in the books occurred in the
chancery court. At one time it was supposed that such
defenses could not be made at law. The later cases
hold, however, that it may be made in either court.
Bank of Steubenville v. Adm'rs of Carrol, 5 Ohio; King
v. Baldwin, 2 John. Ch. 555. In the latter, the mat-
ters were set up at law, and, failing there, suit was
brought in chancery. The chancellor held, however,
that it was proper to be made at law, and that was rea-
son enough to deny the relief. People v. Jansen, 7 Johns.
332. When the facts are ascertained, the rule is the
same in both courts.

Allowing to the reason and spirit, as well as the text
of those statutes modifying and mitigating the rigorous
doctrine of the common law, as to the sanctity of the

seal, some of which have already been alluded to (another article, 102, Code of 1857, p. 494), allowing a plea to the consideration, and we should think we were giving a fuller harmony to our jurisprudence by interpreting them as letting in this defense. Among the statutes germain to the subject is that one making bonds, promissory notes, and other contracts joint and several; and verdicts may be for some defendants and against others. Code, 357, arts. 10, 15.

The views advanced in the case in 1 S. & M. are in harmony with the old common law. That decision was made in 1843, thirteen years before the statute of 1857 was passed, which allows this defense. It is not an authority against the conclusion we have reached. We think the statute has changed the common law. The first and second pleas are good, and the demurrer to them ought to have been overruled. Although the notice was not in writing, they show that the creditor accepted the verbal notice, and agreed to conform to it, which brings the pleas within the principle laid down in Taylor v. Davis, 38 Miss. 496.

The third plea sets up matter subsequent, in discharge, to wit, a sale by the trustee, for cash, of enough property to pay the debt. We think this is a good plea, and the defendants demurrer to the plaintiff's replication ought not to have been visited upon the plea.

For the reasons hereinbefore given, the demurrer ought to have been overruled to the fourth plea.

The demurrer was properly sustained to the fifth plea; that plea does not disclose a contract which will discharge the surety. Newell & Pearce v. Harner, 4 How. 684; Payne v. Commercial Bank, 6 S. & M. 37.

Judgment will be rendered here in accordance with this opinion, and cause remanded for further proceedings.