The opinion of the Court was delivered by
Kennedy, J.
The plaintiff in error was the defendant below. The action was debt, founded upon a bond, which he joined in executing as one of the sureties of Jaeob and George Kohl, who were the principals in it. The defence set up on the trial of the cause was, that the plaintiff below, on the 1st day of September, 1824, executed a release in writing under her hand and seal, to Jacob Kohl, one of the principals in the bond;.whereby she acknowledged that she had received of him her full distributive share out of the real estate of her late father, for, and on account of Avhich, the bond had been given by Jacob and George Kohl, in pursuance of a decree of the Orphans’ Court of the county Avherein the estate was situate; and in consideration thereof, thereby directed and authorised the clerk of the Orphans’ Court, for her, and in her name, to enter satisfaction upon the bond.
The sealing and delivery of the release was proved ; but then it was alleged by the plaintiff below, that it was obtained from her through false representations made by Jacob Kohl; and for the purpose of establishing this, she offered to prove by Mary Jane M‘Carty her daughter, the conversation that took place between her, the plaintiff, and the said Jacob.
The counsel of the defendant beloAV objected to this evidence, unless it were shown that the defendant was present, or was privy to the fraud. The Court, hoavever, overruled the objection, and admitted the.evidence. The opinion of the Court in this behalf, was excepted to, and is made the ground of the first error assigned.
The evidence was clearly admissible; because, if the release was *ProcureJ by fraud, it Ayas therefore void and of no effect, unless rendered otherwise by the subsequent conduct of the plaintiff below. It is admitted by the counsel for the plaintiff in error, that the evidence would have been competent in an action on the bond against Jacob Kohl, who is charged with the fraud, in obtaining the release, but not as against the plaintiff in error, Avho was only a surety in the bond, unless he were privy to the fraud. This distinction however, we think cannot be maintained. No good reason,T apprehend, can be assigned Avhy the plaintiff in error should gain by, or take advantage of the fraud, said to be practised by Jacob Kohl in obtaining the release, if it be, that he has been in no wise prejudiced by it, or placed in no worse condition now than he would have been provided no such release had ever been obtained. But suppose *411 the release to have been the occasion of an injury to the plaintiff in error, if he were now to be held liable on the bond, which could not otherwise have happened, or might have been provided against in case the release had never been given by the defendant in error, and that upon this ground it ought to be considered an available defence in equity, still it being a matter of fact not necessarily, in its nature, connected' with the giving of the release, the proof of it would lie upon the plaintiff in error, and therefore could not even be interposed as an objection to the evidence offered to establish the fraud. To hold as an abstract proposition, that the release, though procured by the fraud of Jacob ICohl without the slightest participation therein of the plaintiff in error, is a discharge of the latter from his obligation, because he was not cognizant of the fraud, would not only seem to contravene the principles of common honesty, but likewise the judicial opinion as often as it has been expressed on this point. In Bridgman v. Green, (Wilmot’s Rep. 64,) where two of the defendants had money given to them by the plaintiff, who was prevailed on to do so by the imposition and undue influence exercised over him by a third defendant, Lord Chief Justice Wilmot, said, “ There was no pretence that Green’s brother or his wife (the two to whom the money had been given through the improper influence of Green the third defendant,) was party to any imposition or had any due or undue influence over the plaintiff; but does it follow from thence that they must keep the money ? No; whoever receives it, must take it tainted and infected with the undue influence and imposition of the person procuring the gift. Let the hand receiving it be ever so chaste, yet if it comes through a corrupt, polluted channel, the obligation of restitution will follow it.” The same principle also seems to have been entertained by Lord Thurlow, in Lutteral v. Lord Waltham, (cited 4 Ves. 290,) and reported Dixon v. Olmias, (1 Cox. Ch. Ca. 415). The object of the bill in that case was, that an estate should be enjoyed, as ifia recovery had been suffered, upon the ground that Lutteral had prevented Lord Waltham while on his death-bed, from suffering a ^recovery, with a view that the estate should devolve upon the person with wdiom. Lutteral was connected. There the estate was by law vested in that individual, which certainly made the case very strong in her favour, and much stronger than the bare acquisition of property by imposition ; yet whatever might have been the final decision of Lord Thurlow upon the case, he had no doubt that it was against conscience, that one person should hold a benefit which he derived through the fraud of another. This doctrine also received the entire sanction and approbation of Lord Eldon, in Huguenin v. Barclay, (14 Ves. 288, 289,) where he says, “I should regret *412 that any doubt could be entertained, whether it is not competent to a Court of Equity to take away from third persons the benefit which they have derived from the fraud, imposition, or undue influence of others and then he refers to the opinions mentioned above of Chief Justice Wilmot and Lord Thurlow. Now it cannot be doubted, that it may be as great a benefit to a person to be released from his obligation as it would be to receive a gift or acquire a right to property; and when he has parted with, or given up nothing for either, there is no reason why he should be permitted to derive any advantage from the one more than the other, when procured either by the. fraud of himself or that of a third person. We therefore think the evidence was properly admitted by the Court below.
The second error is an exception to the opinion of the Court upon the first point submitted by the counsel for the defendant below; requesting the Court to instruct the jury, “ that the release given by Catharine Cordon to Jacob Kohl, was a bar to a recovery in this action against John M‘Carty, who was a surety in the bond, notwithstanding the release might have been obtained through the fraudulent representations of Jacob Kohl, the principal in the bond, if the defendant was not privy to the fraud.” The answer of the Court was, that “ this proposition was not correct.” We can perceive no error in this answer. On the contrary, from what has been shown to be the law, above, in regard to the question embraced in the first error, it is very clear that the Court were right.
The third error is an exception to the opinion of the Court on the defendant’s third point. By it, the Court were requested to instruct the jury, “ that if they believed, that the plaintiff, at the time of the execution of the release, was made acquainted with its contents, and the effect of it, and voluntarily agreed to execute it, the release would be binding upon her.” The Court, to this, answered, “that as a general proposition, this was true, if she were made' acquainted with all her rights, more particularly, that all the parties to the bond would be discharged.” I am not altogether satisfied, that this answer is free from error. For if the Court meant to charge the jury, that unless the plaintiff below were made acquainted, at the time of the execution of re^ease) would discharge all the *other obligors in the bond, as well as Jacob Kohl, the release would not be good, such direction was clearly erroneous: because it was matter of law, of which she would be presumed to have a knowledge, unless it had been shown that she was advised otherwise. But whether the Court intended so to instruct the jury, or not, I am strongly inclined to think, that the jury might have understood the Court in that way, and thus have been misled as *413 to the law on this point. Neither am I convinced, but the jury might have been misled by the previous qualification of the Court, in saying, “If she were made acquainted with all her rights:” for if the jury were induced to believe from this, as it is very possible they may, that it was the duty of Jacob Kohl to have informed the plaintiff below, at the time she gave him the release, of the amount that Ayas coming to her on the bond, &c., otherwise the release would not be good, it would seem to be more than Avas required of him by laAV: because she having access to the bond and all the proceedings in the Orphans’ Court leading to it, must be presumed to have knoAvn the amount of her claim on the bond, and the full extent of her right in this respect; as it does not appear from the evidence, that- there was any misstatement of it made to her. I cannot say, hoAYever, that I am fully satisfied, that the judgment ought to be reversed on account of this assignment of error alone; but as it must be reversed for the next and last error assigned, I have thought it right to mention these objections to the answer of the Court on the defendant’s third point, that they may be obviated on a second trial of the cause.
The fourth error is also an exception to the opinion of the Court, as given to the jury, in answer to the defendant’s fifth point. By it, the counsel for the defendant beloAv requested the Court to charge the jury, “ That if the plaintiff neglected to bring suit upon the bond, or give notice to the defendant of the release having been obtained of her, through the fraudulent and false representations of the principal in the bond, for a period of ten years after the discovery of the fraud, the release would operate as a discharge to the surety.” In answer to this, the Court instructed the jury, “ That if the plaintiff below discovered the fraud within ten years, it would depend upon the other circumstances proved, how that would affect her: that such discovery, in itself, is not a legal bar.” Now it seems, that it appeared on the trial, that Jacob Kohl, in the course of the ten years, became insolvent, and still continued to be so, at the time of the trial. This circumstance, taken in connection AYith the neglect on the part of the plaintiff below, either to bring a suit, or make knoAvn to the defendant below the fact of the release, as she now alleges, having been.obtained of her by false and fraudulent representations, for the space of ten years after she discovered the fraud in this respect, would undoubtedly, upon equitable at be sufficient to the and make the ^release a good protection as to him. Because it. is perfectly evident, that if the plaintiff below ' came to the knoAvledge of the fraud, which, she alleges, was practised upon her, before Jacob Kohl became insolvent, and she had *414 immediately advised the defendant of it, the latter might have obtained an indemnity of Jacob Kohl against his liability as his surety; or have paid the money to the plaintiff below, and reimbursed himself by suit against Ms principal; but after the insolvency of the principal, this was impracticable. Hence it would be unjust, and against all conscience, to make the defendant below liable, when, by the act of the plaintiff there, in giving the release, he had reason to believe he was discharged from his obligation ; and in the next place, through her neglect to advise him otherwise, he lost all possible chance of securing himself against loss on account of his suretyship. It is perfectly manifest, that as long as the plaintiff below made no objection to the release, the defendant had no right to do it, but had every reason to conclude it was good, and formed a complete discharge of himself from all liability on the obligation, and therefore had no occasion to give himself any further concern about it. There does not appear to be any evidence tending to prove that he knew of any fraud or undue influence having been practiced by Jacob Kohl, in procuring the release. It merely appears that he got the release written, but was not present at the execution of it. ' In short, it is difficult to believe, from the evidence, that any fraud was practised upon the plaintiff below, in obtaining the release from her. The only evidence that was offered by the plaintiff, with a view of establishing it, was that of her daughter, who was but eight years of age at the time, and that time about thirteen years before the trial! And she merely says, that Jacob Kohl came to her mother’s house with a piece of writing, and wanted her to sign it: that her mother said she was unwilling to sign it; that she was unable to read or write: that her mother said she knew nothing of a release, until she pushed for her money, till now it was brought in: that Jacob Kohl told her mother, the paper which she signed was for her safety, and that it would not injure her: that he gave her no money at the time of the execution of the release, but gave her money at various times afterwards, and promised to build her a house. Now I cannot avoid thinking, if this evidence proves anything, or be entitled to any weight at all, that it rather goes to show, that Jacob Kohl prevailed on his sister to sign the release, upon the faith of a promise made to her at the time, that he would provide for her, and satisfy her fully for it thereafter: and this, it would seem, he did fulfil, in part, at least, if not in whole. If this was the ground upon which the release was obtained, though Jacob Kohl may afterwards have failed to fulfil his promise, still it would not amount to such a fraud as would avoid the release, even against Jacob himself. It would only amount to a breach of his promise, for which he would *be answerable in an action of assumpsit. But the evidence of the daughter *415 is very indistinct and confused. It consists mostly of declarations made by her mother, not at the time of giving the release,but afterwards, which were not evidence at all, and ought, therefore, to have been excluded or left out of view altogether. Fraud is not to be presumed: it ought to be clearly established by satisfactory proof. The charge of the Court on this point is also somewhat indistinct and obscure, in saying, “ that if the plaintiff below discovered the fraud within ten years, it would depend upon the other circumstances proved, how that would affect her;” without mentioning or explaining- what those other circumstances proved were, which the Court here had an allusion to : thus leaving it to the jury to conjecture what they were; which ought not to have been.
The judgment is therefore1 reversed; and a venire de novo awarded.
Judgment reversed, and a venire de novo awarded.
Cited by Counsel, 12 Wright, 475.
Brought before the Court again, 4 Wharton, 321.