ADMINISTRATOR OF DAVID WILSON *v.* ALBERT G. GREEN, JAMES GREEN AND DANIEL GREEN.

*Principal and surety. Admissions of the principal. Fraud and fraudulent representations.*

The admissions of the principal debtor, in regard to the payment of a note which is lost or destroyed, are equally evidence against his sureties, and will bind them equally with the principal debtor. *Joslyn* v. *Smith,* 13 Vt. 353.

If the creditor intrusts the note with the principal for some fraudulent purpose, and consents that he shall make the sureties believe the debt is paid, and they are thus induced to forego any advantage that they would otherwise have had, the sureties will be released from the contract, in equity, and equally at law, if sued alone.

But if the creditor should intrust the principal with the note for some honest purpose, and the principal should, without his knowledge or consent, represent to the sureties that the note was paid, and even tear off the names of the sureties, or destroy the note, it will not release the sureties, if the creditor, at the earliest opportunity, correct their misapprehension.

And if one supply another with the means of perpetrating a fraud in his name, against one person, and the fraud be perpetrated by the same means, but against other parties, he is to be held liable.

ASSUMPSIT, on a promissory note, dated the fifth day of November, A. D. 1840, payable the first day of December, 1847, without interest, for the sum of $200. Plea, the general issue, and trial by jury.

On trial, the plaintiff introduced, as a witness, one Joseph Moody, who testified that he had some knowledge of Albert G. Green's buying a farm of the plaintiff, at the price of $1,200; said Albert G. told him this, and that he gave notes, without interest. One of the $200 notes came into witness's hands, and also one $150, and witness understood there were three $200, and that said Albert G. said there was such a note as this unpaid, and witness trusteed him on it.

That in the latter part of the summer, or early in the fall of 1845, at the request of the plaintiff, the witness and one other person went upon the stairs, leading from the chamber into the sitting room of the public house, at Waterbury, and overheard a conversation between the plaintiff and defendant, Albert G. Green. That

the conversation had relation to this note, and that Wilson asked said Albert if he was going to pay him, as he agreed; and that said Albert replied that he was, and that he did not take the note of Wilson for any other purpose, but to keep the *Moodies* from getting it on their trustee process. And that said Albert said he had never paid any thing on it, but would when it became due, two years from the next December. That said Wilson asked said Albert if his brothers' names were then on the said note; that said Albert replied that they were not, he had torn them off, and that said note was at his house, with Daniel and James' names torn off.

Upon the cross examination, the witness stated, that before that time, the said Albert G. had told him that he had paid the said note, and taken it up; and that nothing was said about whether said James and Daniel were sureties or not.

A deed being shown witness, the witness identified it, as a deed of the same land bought by said Albert G. Green of the plaintiff. The witness also testified, that he heard the Greens and Wilson all say, that the notes were not on interest, and that Wilson claimed they were, by the contract agreed to have been written, bearing interest. Witness also testified that he *trusteed* the three defendants.

The plaintiff also introduced one Oramel Howe, who testified that he heard the same conversation related by the witness, Moody, as taking place between the plaintiff and defendant, Albert G. Green, at the public house in Waterbury. And that Wilson asked said Albert G. about the note, and about paying him, and that said Albert G. said that he was calculating to pay him when it became due, and said nothing had been paid on it, and that it would become due in December, 1847; said he had taken off the names of James and Daniel, and that should not make any difference.

Paul Dillingham, a witness on the part of the plaintiff, also testified that he knew of the existence of the notes given for this farm, had first and last seen them all; said notes were signed by all the defendants, not on interest, and payable along yearly; saw all of Wilson's notes when he went away from this part of the country, and thinks one of the notes he then had, corresponded to the declaration in this case.

On cross examination, witness testified that Albert G. Green was responsible up to last fall, and that he has had some ups and

downs since the notes were given; has property and then fails. That most of the time until last fall, might have secured $200 against him, but now said Albert professes to be insolvent; that he went away openly, and is said to be in California. Witness does not know how he was when the note fell due; that said Albert then lived in Cambridge, and that when he came to Waterbury, and since that time up to last fall, was good for $200.

The defendants, on their part, offered one Rufus C. Smith, who testified that he drew the deed, conveying the farm from plaintiff to defendant, Albert G. Green; that seven notes were executed on the occasion, four for $150 each, and three for $200 each; that said notes were all payable on the first day of December, and the last note in 1847, and all dated November 5, 1840; and that all of said notes were without interest, and the plaintiff was to occupy a certain portion of the house. That James and Daniel Green signed the notes, as sureties. And that at the time of the disclosure, in the trustee process, this note was brought forward by the defendants as paid; that said Albert was good at the time he gave the notes. That in September, 1842, James and Daniel Green took a mortgage to secure them; and after said Albert came to Waterbury, he had stuff about him to secure more than $200; and that the fact of said James and Daniel being sureties did not appear on the face of the notes.

The defendants put into the case the deed of the land, and the mortgage to James and Daniel. It also appeared that the note went into Albert G. Green's possession, as early as April, 1842.

The counsel for the defendants contended that the admissions of Albert G. Green were not binding upon the other defendants, they being mere sureties, and that all the evidence on the part of the plaintiff ought to be rejected. The court received the evidence, to which defendants excepted.

And further, that if they found that the plaintiff voluntarily gave up said note to said Albert, and he showed it to said James and Daniel, and informed them that he had paid and taken up said note, and that they believed he had done so, and in consequence, they had neglected to take measures to have said note paid by said Albert, or obtain security from said Albert in any manner, and that said Albert had failed, and become wholly insolvent, and that they

could otherwise have obtained security or payment of said Albert, that then the jury should return a verdict for the defendants.

The court declined so to instruct the jury; but did charge them, that the evidence given was competent to be weighed by them, and if they were satisfied such note ever existed, for the proof of which the admissions of Albert G. Green were not competent, they would then inquire whether the note had been paid, and upon this point, the declarations of said Albert, he being the acknowledged principal, were competent. That the note having been given up to him was *prima facia* evidence of its payment, and imposed upon the plaintiff the burden of showing that such was not the fact. And that this, it was competent for plaintiff to show by the declarations of said Albert, and if they believed such was the fact, the plaintiff was entitled to recover, notwithstanding the plaintiff intrusted the note to said Albert, to enable him to make use of it, as evidence of its being paid, on the trial of the trustee process, and that he had taken advantage of that confidence, and had shown it to the two other signers, who were sureties merely, and represented to them that he had paid the note, and thus induced them to rely upon this representation, and forego taking security on this note, when otherwise they would have done it, if this was done without the connivance or consent of the plaintiff, or any expectation on his part, that it would be done. To all which, and also to the refusal of the court to charge as requested, the counsel for said James and Daniel excepted.

The jury returned a verdict for plaintiff.

*O. H. Smith* for the defendants.

1. The admissions of the principal, with whom a surety is bound, in a promissory note, which are not a part of the *res gestae*, cannot be received to affect the surety.

Cowan & Hills' Notes to Phil. on Ev. part 1, page 671, and cases cited.

To allow the admissions of insolvent principals to charge sureties, would be a violation of every principle of fair dealing and sound policy. It would lay a broad foundation for collusion and fraud.

2. The charge of the court, relating to the liability of the sureties, was erroneous, and the court should have instructed the jury

in accordance with the second request of the sureties. *Baker* v. *Briggs*, 8 Pick. 122.

If the plaintiff gave up the note to Albert G. Green, to be used as evidence of its having been paid, in a suit where all the defendants were sued as his trustees, for the money due on this very note; if this conduct has operated to the prejudice of the sureties, and it would operate as a fraud upon them now to permit him to claim pay of them, he should therefore be estopped from so doing, and especially in a case where there is no pretence that the sureties were *particeps criminis.*

It would seem that the plaintiff procured Albert G. Green to commit the crime of perjury, and furnished him with the evidence to satisfy James and Daniel Green that the note had been paid, and thereby induced them to make a disclosure that was untrue in fact; he now asks the court to assist him in reaping the reward of his villany, at the expense of innocent sureties.

It is well settled, that courts of justice will not sustain actions in regard to contracts or property, which have for their object the violation of law. *Spaulding* v. *Preston*, 21 Vt. 9.

*Paul Dillingham* for plaintiff.

1. The note in this case was executed jointly and severally, by all the defendants; and there was nothing about the note to indicate that any of the defendants were sureties.

2. There was no evidence in the case, that the plaintiff ever knew that James and Daniel were sureties, till it was disclosed on the trial. This must be proved, before they can claim to be discharged by *any* act of the plaintiff. This knowledge *the court can not infer.* *Wilson* v. *Foot*, 11 Met. 285.

3. As admissions of A. G. Green were excluded, touching the execution of the note, there was no error in admitting them to show that the note had never been paid. *Brown* v. *Munger*, 16 Vt. 12. *Amherst Bank* v. *Root et al.*, 2 Met. 522. *Cadwell* v. *Sigourney*, 19 Conn. 37.

4. This note having been executed by defendants as joint and several principals, in suit against all, it is not competent for James and Daniel to avail themselves of any defence peculiar to sureties. *Baker* v. *Briggs*, 8 Pick. 121. *Carpenter* v. *King*, 9 Met. 511. *United States* v. *Howell*, 4 Wash. 620. *Price* v. *Edwards*, 10

Administrator of Wilson *v.* Green et al. `

Barn. & Cres. 578. *Ashley* v. *Paddock,* 1 Exch. Rep. 564. *Res* v. *Barrington,* 5 Ves. Jr. 541. *Bull* v. *Allen et al.,* 19 Conn. 101. *Seaver* v. *Young et al.,* 16 Vt. 658.

5. Admitting that James and Daniel Green can, in this form of action, avail themselves of the sureties' defence, the facts found by the verdict and detailed in the bill of exceptions do not exonerate them. The only ground upon which such defence could rest in this case, would be that of an equitable estoppel. See opinion of COWEN, J., in *Dezell* v. *Odell,* 3 Hill 219.

6. The possession of the note, years before it became due, would never have misled the other signers, had it not been for the false representations of A. G. Green. Had the plaintiff intrusted A. G. Green with his name in blank to fill up a note over it, and instead of that, he had forged a receipt over it, cutting off this very note, and the other defendants, on seeing that, had foregone taking security, would that forgery have discharged them? In *Gordon* v. *McCarty,* 3 Wharton, 407, this point is discussed.

7. The case finds, that when this note fell due and was sued, A. G. Green had personal property, on which the debt could have been secured; so that if the defendants, James and Daniel Green, are in any danger of losing, it arises from their own negligence, and from no wrong on the part of plaintiff, as the suit was commenced at once, on the note falling due.

The opinion of the court was delivered by

REDFIELD, Ch. J. The first question made in the case, is in regard to the admissions of the principal debtor being treated as evidence against the other defendants, who were in fact mere sureties. This point was virtually decided in *Joslyn* v. *Smith,* 13 Vt. 353. For if admissions, by way of payments, made by the principal, are good to bind the surety, in regard to the statute of limitations, they must be good in other forms equally, and in regard to other points, as it seems to us. And the admissions were equally in regard to the matter of payment of the note. The only difference in the two cases, is in regard to the *form* of the payment, or the manner in which the admission is proposed to be used.

There is more difficulty, and more uncertainty, in regard to the other point in the case. We think, upon the facts, as stated, it must be considered that the testimony tended to show, that the two

last defendants were known to the plaintiff to be sureties, at the time of signing. And although it might have been the better rule, to treat all who execute a note as jointly and severally holden alike, as really and to all intents joint principals, the same as if they had expressly so undertaken, still, the rule has been too long settled otherwise in this State, to be now brought in question. And sureties have constantly, for many years, been allowed to show their relation, and to be released from the obligation, on the ground of the creditor having, by a new contract with the principal, extended the time of payment. The rule seems to be otherwise in Connecticut. *Bull* v. *Allen* 19 Conn. 101.

There is no doubt, too, we think, that had the creditor, in this case, expressly consented that the sureties should be made to believe the debt paid, and thus made to forego any advantage they would otherwise have had, the sureties would have been released from the contract, in equity, and equally at law, if sued alone. The question then, is, whether the creditor, in the present case, must be regarded as impliedly consenting to what the principal should do with the note, which he intrusted to him.

We think, if the note had been given up to the principal for some honest purpose, as to enable him to make a disclosure, describing the note, and he had represented to the sureties that it was paid, and even torn off their names, or destroyed it, it would not have released them, if the creditor took the earliest opportunity to correct this misapprehension. *Gordon* v. *McCarty,* 3 Wharton, 407.

But when the creditor intrusts the note to the principal, for the express purpose of enabling him to perpetrate a fraud upon one person, justice and morality require that he should be responsible, if some other be made the victim. He ought not to complain of this. The rule of making one responsible for the acts of an agent in fraud, even beyond the person intended to be injured, is not new. An accessory to murder, before the fact, will be held liable, even though the person originally intended to be killed should escape, and another, towards whom no express malice had been conceived, should be destroyed by the same instrument. And in general, if one supply another with the means of perpetrating a fraud, in his name, against one person, and the fraud be perpetrated by the same means, but against other parties, he is to be held liable. This rule holds true as to all crimes, and we think equally as to all frauds.

Administrator of Wilson *v.* Green et al.

And although the testimony was slight, in the present case, to show any imposition practised against the sureties, being only their own act, in taking part security for the notes; and omitting this, which is about equally well explained upon other grounds, we are inclined to think that point should be submitted to the jury, if it constitutes a full defence to the action at law, as against all the defendants.

This last point should, perhaps, be examined farther, unless the party chooses to proceed in equity, where such partial defence to the action is more properly cognizable.

1. It is nothing more than an estoppel *in pais*, and as such, is not more extensively operative, than a covenant never to sue one of two or more joint contractors, which is no defence to an action against all the signers, when sued jointly, but would be, when each is sued alone, as to the one in whose favor is the covenant. This is the view of the law distinctly laid down in all the English cases, as to covenants not to sue, and in *Bull* v. *Allen*, 19 Conn. 101, by HINMAN, J., and in *Baker* v. *Briggs*, 8 Pick. 121, by PARKER, Ch. J.

2. It seems to us, that to hold it a bar to the whole action against all the contractors, is giving more effect than is just or tenable. The party is thus placed in an attitude, where he cannot know how to proceed, until he has experimented by an action. If he sue the principal alone, and secure his debt by attachment of property, he is liable to be defeated, by the defendant insisting upon the nonjoinder of the other defendants. And as he cannot take any advantage of this estoppel, unless the other party claim the benefit of it, which he will not be likely to do, if he can derive greater advantage, for the time, by waiving it, he cannot show any excuse for not joining the other defendants, where the contract is joint and not several. And if he do join all the contractors, he is liable to be defeated, and lose the benefit of an attachment against the principal alone, if the surety may defeat the whole action, by showing an estoppel in favor of himself alone. The recent statute will cure these inconveniences in future actions. But that does not apply to actions pending before the statute passed.

We must, therefore, hold the case farther upon this point, unless the party chooses to proceed in equity.

Judgment reversed, and new trial granted.