## Maryland Casualty Company, Appellant, *v.* Bower.

*Railroads—Corporations—Authority of chief engineer—Release of contractor—Principal and surety—Termination of contract of suretyship.*

Where a contractor for railroad work agrees to pay an annual premium to a surety company for executing a surety bond so long as the contractor's liability on the bond shall continue, and until the plaintiff shall be released from liability by the railroad company, a release of liability executed by the chief engineer of the railroad company will end the contract of suretyship, where it appears that the contractor's agreement with the railroad company gave the chief engineer great powers over the conduct of the work, with authority to determine when the contract had been completed, and it also appears that it had been the uniform practice of the chief engineers of the company to execute bonds in cases of contract, and to terminate the liability, when in their judgment, the work had progressed far enough to protect the company.

When a corporation has delegated to an officer the entire control and management of a particular part of its business, evidence is admissible to establish what had been the uniform practice of that officer, acquiesced in without question by the corporation in dealing with the subject-matter.

Argued Oct. 24, 1917. Appeal, No. 216, Oct. T., 1916, by plaintiff, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1914, No. 2382, on verdict for defendant in case of Maryland Casualty Company v. C. P. Bower. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit to recover premiums on a surety bond. Before ROGERS, J.

The opinion of the Superior Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in refusing binding instructions for plaintiff.

*Maurice W. Sloan,* for appellant.—Where the by-laws of a company give no authority to the officer to act and there is no ratification by the board of directors, the company is not bound by the act of the officer: DeForest v. Northwest Townsite Co., 241 Pa. 78.

*John Lamon,* of *Lamon & Kincade,* for appellee, cited: Kaufmann v. Friday, 201 Pa. 178; Lloyd v. West Branch Bank, 15 Pa. 172; Millward Cliff Cracker Co.'s Est., 161 Pa. 158; DeForest v. Northwest Townsite Co., 241 Pa. 78.

OPINION BY PORTER, J., October 12, 1918:

The defendant had contracted to perform certain work for the Philadelphia & Reading Railway Company and the plaintiff company became surety for the performance of the contract. Under the terms of the agreement between the plaintiff and the defendant the latter agreed to pay to the former an annual premium of $1,650, in advance, so long as the liability of the plaintiff on the bond continued, "and until sufficient official notice in writing, of the termination of the said bond and the liability thereunder, shall be served upon the company." On September 16, 1914, there was served upon the plaintiff company a release of all liability under the contract, which release was signed by W. Hunter, chief engineer of the Philadelphia & Reading Railway Co. The defendant admitted liability for the pro rata proportion of the premium, for the period ending September 16, 1914, and the plaintiff took judgment for that amount, electing to proceed for an alleged balance. The only question at the trial, was as to the authority of the chief engineer of the Reading Railway Co. to terminate the liability upon the bond. The jury found that the chief engineer was vested with such authority and returned a verdict in favor of the defendant. The plaintiff appeals from that judgment, contending that there was not sufficient evidence to warrant such a finding.

The bond upon which the plaintiff company became surety had attached to and made part of it a copy of the contract between the defendant and the railway company. It was, therefore, perfectly competent for the court below to consider that contract, in connection with the oral evidence, in submitting to the jury the question of the authority of the chief engineer. The contract between the railway company and the defendant required the latter "to give an approved trust company's bond in the sum of one-half of the amount or approximate amount of the contract for the faithful execution and completion of the work." It said nothing about who was to fix the amount of the bond or approve of the surety. This contract expressly delegated to the chief engineer very great powers with regard to the subject-matter. It provided that, monthly estimates of the work should be made by the chief engineer and that, at such time and place as that officer might designate advance payments should be made to the contractor, for work and material done during the preceding calendar month, quantity, character and value of said work to be certified by the chief engineer, such payment to be made with the written approval of the chief engineer and not to exceed ninety per cent. of the value as estimated and certified. It further provided that, at the discretion of the chief engineer, a larger proportionate part than ten per cent. of each monthly certificate might be retained by the railway company "as a protection against overpayment for work done, as compared with that remaining to be done." The contract provides that the chief engineer shall have authority to accept or reject the work, and that his certificate "alone shall operate as an acceptance of the work, or a release of the contractor." It expressly provided that the chief engineer, alone, should determine when the contractor had completely performed his contract, and made the final estimate of the chief engineer conclusively binding upon the parties. It expressly vested the chief engineer with authority to require addi-

tional work to be done, and to make any alteration thereafter determined upon by him as necessary or desirable in the location, line, grade, plan, form, or dimensions of the work either before or after the commencement of the same; and in case such alterations diminished the quantity or extent of the work to be done they should not constitute the basis of a claim for damages, for loss of profits in respect to the work dispensed with. "All questions, differences or controversies which may arise between the parties hereto with regard to any work to be done under this agreement, whether as to its performance or nonperformance, or in any way whatever pertaining to or connected with said work shall be referred to the said chief engineer and his decision shall be in the nature of an award." The contract did not expressly delegate to the chief engineer the power to cancel the bond of the surety, but it did vest him with authority to determine the proportion of the amount of each monthly estimate to be retained in order to protect the interests of the company. It gave him authority to diminish the amount of work to be done under the contract, or to increase it and he had the power to say when the contract was completed.

Mr. Hunter, the chief engineer, who released the bond in this case, having died, his successor in office was called as a witness. He testified that he had been connected with the office of the chief engineer for fourteen years and during that period it had been the uniform practice of the office, to prepare contracts to ask for surety bonds for the faithful completion of work in order to protect the company, and to terminate such bonds when, in the judgment of the chief engineer, the company was fully protected. The assistant secretary of the company testified that it was one of the duties of the chief engineer to execute bonds in cases of contract and to terminate the liability when, in his judgment, the work had progressed far enough to protect the company, under contracts similar to that involved in the present

case.  In view of the extraordinary powers delegated to the chief engineer by this contract, not only to supervise the execution of the work, but to require other work to be done and to omit such portions of it as he saw fit, to retain out of the payments for the work performed such amounts as he thought necessary to secure completion of the contract and to determine when the contract had been completed, we are of opinion that this case is within the principle that when a corporation has delegated to an officer the entire control and management of a particular part of its business, evidence is admissible to establish what had been the uniform practice of that officer, acquiesced in without question by the corporation in dealing with the subject-matter.  It is proper to say that the appellant has not assigned for error the admission of this testimony.  This testimony, taken in connection with the provisions of the contract, was sufficient to sustain the finding of the jury.

The judgment is affirmed.