SAMUEL McCANE, Appellant, v. LOUIS WOKOUN et al., Appellees.

FRAUD: Right to Rely. An action for fraud and deceit may not
1  be based on *borrowed* fraud and deceit. In other words, a party has no right to rely on representations unless they were made for the purpose of influencing *his* action. Applied where the owner of land, in obtaining a loan *from a bank*, was alleged to have fraudulently represented to the cashier the condition of the land, and where the cashier *subsequently* bought the land, and sought to avail himself of the former representations *to the bank*.

**VENDOR AND PURCHASER:** Waiver of Rescission. A purchaser may not rescind when, with full knowledge of every material fact, he accepts attornment from the vendor's tenant, rents the property for a term of years, collects the rent, and exercises, generally, unrestricted acts of ownership over the property.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

OCTOBER 19, 1920.

ACTION in equity to enforce specific performance of the defendants' contract to purchase land owned by the plaintiff. There was a decree in favor of the defendants, and plaintiff appeals.—*Reversed and remanded.*

*Voris & Haas,* for appellant.

*Treichler & Treichler,* for appellees.

WEAVER, C. J.—Many of the material facts in the case are not the subject of dispute. The plaintiff was the owner of a farm lying on or near the Wapsipinicon River, in Linn County. The defendant Louis Wokoun was and is the cashier of a bank at Cedar Rapids, Iowa. From or through this bank, in August, 1917, plaintiff obtained a loan of $8,000, secured by mortgage on the farm. In negotiating the loan, the bank, by its committee, consisting of the cashier, Wokoun, and two other persons, visited and personally examined the farm, and, as they were satisfied with the security, the loan was made. On the occasion of this visit to the farm, the committee was accompanied by the plaintiff, and there was more or less conversation between him and them concerning the farm, its character and value. In September, 1917, after the loan had been perfected, plaintiff offered the farm for sale at auction, and, as the day, September 21st, approached, asked Wokoun to serve as clerk of the sale. To this Wokoun consented, and, as a witness, swears that, while he was driving to the farm with plaintiff, the latter

*(margin note: 1. FRAUD: right to rely.)*

said to him that he had received an offer of $150 an acre for it, but, the proposed buyer being unable to make a sufficiently large initial payment, he could not accept it. When they arrived at the farm, the sale proceeded. Some other person or persons having bid the sum of $100 per acre, defendant raised the bid to $101, and the property was struck off to him. Pursuant to this sale, the contract here sued upon was made and executed. The contract provides for a cash installment on that date, the further sum of $5,000 on November 1st, and for final payment and settlement on the following March 1st, the defendant assuming payment of the mortgage debt to the bank.

On September 26, 1917, defendant telegraphed to plaintiff at his home in Illinois, saying, "Boundary line not as stated by you. Will nullify the contract," and on same day, wrote plaintiff a letter, further complaining "that a number of acres of the farm lay across the river, and that there was other waste land." On October 8, 1917, defendant again wrote plaintiff, saying:

"As I advised you a short time after the signing of the contract between you and myself, I will want to have the land surveyed before any further payment is made under the contract. I would suggest Mr. T. R. Warriner of this city as a good surveyor as he is well acquainted with the lands in this county and has done most of the surveying in this vicinity."

On October 25, 1917, he again wrote as follows:

"Your favor of the 24th inst. received, advising that you left the deed and contract at the City National Bank, Evanston, Ill., and that I should send the $5,000 payment and the second mortgage to that bank. I wrote you twice in regard to having the land surveyed. I have not received any word from you that you intend to have that done. The land was purchased at so much per acre and I do not propose to pay for any more acres than what there will be in the tract. On account of heavy subscriptions to the Liberty Bonds, I may have some difficulty in obtaining the $5,000 on November 1st. If you had any proposition from anyone else I wish

you would give me the name of the parties who figured in it."

On November 3, 1917, replying to plaintiff's request for payment of the installment of $5,000 on the purchase price, defendant again said:

"As I have stated twice now no further payment will be made until the land is surveyed by a competent surveyor. I might take the land if you deduct the amount of the second mortgage $1,816.70 to offset your misrepresentations and am not very anxious to do that."

On November 8, 1917, he wrote:

"Your favor of 6th inst. received. You state you are surprised at my saying that you misrepresented the boundary line. You did not on the day of sale, but you did when you made your application for the loan when you walked with me while inspecting the farm. The fact is that I had no intention of buying at the sale, and I made my bid with the only intention to help your sale, but unfortunately no other bid was made. The conditions caused by the Liberty Bond subscriptions have so changed from the time I made the contract, that it is difficult for me to raise the $5,000 even if there was no difference between us. I do not believe in lawsuits any more than you do, and have always avoided them if possible, but in this case the farm was bid in under the impression conveyed by you when I examined the farm for the loan. As far as any damages are concerned, you could not collect anything under the terms of the contract. You can try to force me to fulfill the contract but no more."

Other correspondence ensued, the difference between the parties gradually becoming more embittered, until this action was begun, in October, 1918.

It should also be said that, at the date of the contract, the land was in possession of one Ramsey, under a lease from the plaintiff for the year 1917. After the sale, the tenant attorned to Wokoun, who received the rent, and continued Ramsey in possession for the years 1918 and 1919. The rent received, Wokoun says, was applied by him to the payment of taxes, repairs, insurance, and interest on the

loan, and to some minor improvements—all of which expenses, he says, he paid "to protect the bank." In October, 1917, defendant listed the land with one or more agents for sale or trade, at a stated value of $125 per acre.

As a witness, defendant makes no claim or pretense that he ever had any negotiation with plaintiff for the purchase of the farm, except such as is shown by his bid at the auction sale, and the execution of the contract pursuant thereto. His charge of false representations is based wholly on what he asserts plaintiff said to him, or in his presence, when the loan committee visited the farm, weeks before the subject of a sale of the property had been mentioned by either party, and upon the alleged statement made by the plaintiff, prior to the auction sale, that he had been offered $150 an acre. The subject of a sale of the land to the defendant does not appear to have ever been discussed between the parties, up to the time defendant made his bid at the auction, nor did plaintiff at any time request or solicit defendant to bid at the auction. Indeed, if we may credit defendant's own statement in his letter of November 8, 1917, the bid by him was not made with any intention of buying, but was voluntarily offered by him to "help on" the sale; "but unfortunately no other bid was made," and he thus unexpectedly and unintentionally became the purchaser. Taking his own showing as literally true, it must be said that there is an utter failure of evidence on which the court or jury could base a finding of false representations by the plaintiff. It is an elementary principle of law on this subject that:

"No one has a right to accept and rely upon the representations of others but those to influence whose action they were made." 2 Cooley on Torts (3d Ed.) 940.

In the same connection, the same author says:

"When statements are made for the express purpose of influencing the action of another, it is to be assumed they are made deliberately, and after due inquiry, and it is no hardship to hold the party making them to their truth. But he is morally accountable to no person whomsoever but the

very person he seeks to influence, and whoever may overhear the statements and go away and act upon them can reasonably set up no claim to having been defrauded, if they prove false. Fraud implies a wrongful actor and one wrongfully acted upon; but, in the case supposed, there is no privity whatever. *Therefore, one may even be the person to whom false representations are made, and yet be entitled to no remedy, if they were made to him as agent for another, and to affect the action of the other, and were not intended to influence his own action.*" 2 Cooley on Torts (3d Ed.) 941.

The instant case falls clearly within the quoted rule, the language of which we here italicize. The statements which the defense attributes to the plaintiff were made to the defendant as agent for the bank in the matter of a loan upon the land, and were doubtless intended to influence the action of the bank. The loan was, in fact, made; and, if the representations were false, and the bank was thereby deceived or misled to its injury, a right of action accrued thereon to the bank alone, and not to the agent who represented it.

Illustrative of this proposition is the case of *Wells v. Cook*, 16 Ohio St. 67. There, the plaintiff, as agent of his brother, purchased from defendant a number of sheep, which were represented by defendant to be sound and free from disease, though they were, in fact, diseased, and defendant knew it. Soon thereafter, the plaintiff, relying upon the truth of said representations, purchased the sheep from his brother, and mingled them with his own flock, to which the disease was communicated. It was there held that an action for the deceit would not lie in plaintiff's favor, and that a petition alleging the facts was demurrable. See, also, *Lembeck v. Gerken*, 88 N. J. L. 329 (96 Atl. 577); *Butterfield v. Barber*, 20 R. I. 99 (37 Atl. 532).

The citations by appellee of *Wilson v. Green*, 25 Vt. 450, and *Merchants' Nat. Bank v. Robison*, 8 Utah 256 (30 Pac. 985), are not in point. The rule there applied is to the effect that one who supplies another with means of perpetrating a fraud in his name against one person, and the fraud is, in fact, perpetrated by the same means, but against other

parties, may be held liable to such parties for the deceit: a proposition which may readily be affirmed, without any departure from the rule applied in *Wells v. Cook*, supra. There is in this case no evidence that, at the time the alleged misrepresentations were made to the loan committee of the bank, plaintiff desired to sell or was offering to sell the farm, or that defendant had any desire to purchase it, or that the idea of making such purchase ever entered his mind, until he announced his bid to the auctioneer who struck it off to him. To permit him now to repudiate his purchase, on the theory that he acted in reliance upon the statements made by plaintiff to the bank's representatives, in negotiating the loan weeks before the sale, and having no connection whatever therewith, would be a startling departure from all recognized rules and principles of the law applicable to charges of fraud and deceit.

It may also be said that, even if there were evidence in the record from which actionable fraud and deceit could properly be found, we are of the opinion that defendant is in no position to claim or demand a recission of the contract. It is true that, within a few days after the deal was made, defendant wired plaintiff, saying "Boundary line not as stated by you. Will nullify the contract." Were this all, it might perhaps be construed as an election by him to rescind. But this was soon followed by another notice, complaining of a deficiency in the acreage of the farm, and saying, "I will want to have the farm surveyed, before any further payment on the contract." This demand for a survey and allowance for an alleged shortage in measurement was repeated on two or more occasions, accompanied with the statement that " the land was purchased at so much per acre, and I do not propose to pay for any more acres than what there will be in the tract." These declarations are inconsistent with the idea that defendant considered the contract rescinded, but are, rather, evidence of his understanding that it was still existing, and that he was entitled to claim the benefit of its provisions. His admitted conduct

2. VENDOR AND PURCHASER: waiver of rescission.

in leasing the land, offering it for sale, collecting the rent, and exercising all the usual acts of ownership over the property since the date of the contract, is not to be reconciled with the theory of a rescission by him. His explanation that he did these things "to protect the bank" does not explain. The acts mentioned are only those which his contract of purchase bound him to perform. If that contract had been rescinded, he had no right to the possession, use, rents, or profits of the farm, and, but for his character as a purchaser, his assumption of control over it was a sheer trespass.

The terms of the contract are simple, and the defense of fraud and misrepresentations is not sustained by the evidence. No equitable grounds are shown for refusing the plaintiff a decree for specific performance. There is, however, some evidence fairly tending to show that the actual area of the land is several acres short of the measurement of 163 acres, as stated in the contract, a difference for which, if it exists, defendant should have proper allowance. The decree below will, therefore, be reversed, and case remanded to the district court, to enter a decree for the plaintiff for specific performance of the contract sued upon, subject to proper credit to the defendant for the deficiency, if any, in the acreage of the farm. If the amount of the deficiency, if any, be not agreed upon by the parties, the court is authorized to hear such additional testimony on this issue as may be found necessary for its determination.—*Reversed and remanded.*

Lᴀᴅᴅ, Sᴛᴇᴠᴇɴs, and Aʀᴛʜᴜʀ, JJ., concur.