Commonwealth, to use of Dollar Savings & Trust Co., Trustee, Appellant, *v.* Picard et al.

Argued December 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Thomas Patterson,* of *Patterson, Crawford, Arensberg & Dunn,* for appellant.—The liability of defendants as sureties on the bond was not terminated by the action of the board for licensing and regulating private banks of June 18, 1924: Norton v. Shelby Co., 118 U. S. 425; Chicago, Indiana, etc., Ry. v. Hackett, 228 U. S. 559.

*Thomas F. Garrahan,* with him *H. W. McIntosh,* for appellee Daube.—The liability of defendants as sureties on the bond, if any existed, was terminated by the action of the board for licensing and regulating private banks on June 18, 1924: Gordon v. M'Carty, 3 Wh. 407; Beaver Trust Co. v. Morgan, 259 Pa. 567; Shock v. Miller, 10 Pa. 401; Warner v. Poor Directors, 38 Pa. Superior Ct. 437; Phila. v. Com., 52 Pa. 453.

122

*James H. Duff*, of *Duff, Davis, Scott & Smith*, for Picard, appellee.

OPINION BY MR. JUSTICE KEPHART, January 7, 1929:

By the Act of June 19, 1911, P. L. 1060, the State regulated private banking. It enacted in substance that no individual should thereafter engage in the business of receiving deposits of money for safekeeping or for the purpose of transmission to another without having obtained from the board a license to engage in such business, under penalty of fine and imprisonment. A board for licensing and regulating private banking, hereinafter called "board," was created. By section 8, it was provided: "The foregoing provisions shall not apply...... (six) to any person......now engaged in business as private bankers, when such person......and his or her predecessor......continuously and in the same locality have conducted the business of private banking for a period of seven (7) years prior to the approval of this act, and such banking institution is not engaged in the sale, as agent or otherwise, of railroad or steamship tickets."

William F. Sossong had been engaged in private banking for more than thirteen years prior to the approval of the act. To meet the demand of clause 6 of section 8, as it related to private bankers engaged in the sale of steamship tickets, he executed a bond in the sum of $50,000, with sureties, as permitted by clause 4 of section 8. The bond was conditioned for the "faithful holding of all moneys that might be deposited" with him in accordance with the terms of the deposit, and the repayment of such moneys, etc. Sossong continued to sell these tickets until 1919, when, according to his evidence, he ceased.

Under the Act of July 17, 1919, P. L. 1003, as amended by the Act of May 20, 1921, P. L. 997, all persons engaged in selling steamship tickets must secure a license from the State. The fact that sellers were engaged in the banking business was immaterial. When Sossong

ceased selling steamship tickets his son took up the business under the Act of 1919. The elder Sossong took no action to cancel the bond held by the secretary of banking until 1924. In that year he wrote the board, claiming he was exempt from the operation of the Private Banking Act under clause 6, because he had been in business for more than seven years before 1911, and was not engaged in selling steamship tickets. At a meeting of the board the following minute was made: "A letter was read to the Board from Mr. William F. Sossong, Carnegie, Pa., who had for some years been operating under exemption No. 4 of the Private Banking Act, requesting that he now be exempt under exemption No. 6, by reason of his having been in business in the same locality seven or more years prior to 1911. Upon motion of Dr. King, seconded by Mr. Cameron, the exemption requested was granted, and authority was given for the termination of the liability under the $50,000.00 individual bond filed with the Department of Banking under exemption No. 4." This motion was duly carried, Sossong was notified by letter, and he in turn notified one of the sureties.

Later, with the failures of what have been called the Bell Banks of Carnegie, this Sossong was forced into bankruptcy, and the Dollar Savings and Trust Company was named as trustee for the banking business. The bond, in July, 1926, was duly entered against the sureties, who then presented a petition in the court below asking that the judgment so entered be opened and they be permitted to file a defense thereto. The court below opened the judgment for the reason that the Act of 1919, as amended, having been held unconstitutional in DiSanto v. Com. of Pa., 273 U. S. 34, the Act of 1911, being similar to the Act of 1919, was also unconstitutional, and the bond having been given because of a void Act of Assembly, it too was void. This appeal followed.

While the constitutional question, as well as that of a voluntary bond and consideration, has been discussed in

the briefs, we will not pass on any of them at this time. It is a fundamental rule that a court will never pass on the constitutionality of a statute unless it is absolutely necessary to do so in order to decide the cause before it. If the bond was properly released by the board, and the liability of the sureties thereunder ceased, it would be unnecessary to decide these questions, although they would become important if the liability was not terminated by the action of the board. Nor will we discuss the effect of the bond where the principal had ceased the business which called the bond into being, in a case where no board action was taken.

The authority of the board, as contained in the Act of 1911, includes ministerial acts as well as administrative powers. In addition to the duties there imposed, the board is to conduct investigations. It has discretionary power to approve or disapprove applications, and determine whether proposed applicants come under the exemptions named in section 8.

When the Act of 1911 was enacted, Sossong, in obedience to the qualification of exemption 6 relative to the sale of steamship tickets, secured the continuance of his private banking business by filing a bond under exemption 4, and continued thereunder as long as he sold steamship tickets. Had he not been so engaged, his right, under exemption 6, to continue private banking without bond, is not disputed. Though he ceased to sell tickets in 1919, he took no steps to have the bond released until 1924. The question having been submitted to the banking board, it had authority to determine the class into which appellant's business was to be placed by ascertaining whether the conditions still existed that took him out of the sixth exemption of section 8. It could determine whether he was engaged in business for seven years or more before 1911, and whether he was still selling steamship tickets. If it found he had ceased to sell tickets and was entitled to continue business without restrictions, it could cancel the bond given because that

condition existed. Such cancellation would not affect antecedent liability for deposits, but would determine future liability on that instrument for rights arising since the date of cancellation.

The power of the board to order cancellation must be determined from their general powers contained in the enabling act. Where officers are entrusted with general powers to accomplish a given purpose, they include as well all incidental powers or those that may fairly be deduced from the ends intended to be accomplished. Where an act requires public officers, under given conditions, to secure bond for the faithful performance of any act or duty, or the protection of public funds or other moneys, those whose duty it is to demand and secure such protection may determine whether performance has been made or whether the conditions under which the security is given no longer exist, and as the question is determined they may release or hold the bond. This has been held to be so in ordinary business matters. See Maryland Casualty Co. v. Bower, 70 Pa. Superior Ct. 304. Where an act confers jurisdiction it impliedly grants the power of doing all acts and employing all means that are essentially necessary to its execution: Endlich on Interpretation of Statutes, section 419.

It is elementary law that if a principal is discharged or his responsibility lessened or increased, without the consent of the surety, the latter is discharged: Berks v. Ross, 3 Binn. 520; Dickson v. Wolf, 5 W. N. C. 37; Stearns on Suretyship (3d ed.), 146. This may occur even where the release was wrongfully obtained. As held in Gordon v. M'Carty, 3 Wh. 407, although a release may have been obtained by a fraud practiced upon the obligee by the principal obligor in a bond, yet if the surety were not a party to the fraud, and the obligee suffer several years to elapse without bringing suit or giving notice to the surety of the fraud practiced, during which time the principal becomes insolvent, these

circumstances will in equity discharge the surety. "Hence it would be unjust, and against all conscience, to make the defendant below liable, when, by the act of the plaintiff there, in giving the release, he has reason to believe he was discharged from his obligation; and, in the next place, through her neglect to advise him otherwise, he lost all possible chance of securing himself against loss on account of his suretyship." See also Carpenter v. King, 9 Metc. (Mass.) 511.

Appellant, foreseeing the force of this position, sought to destroy the effect of the annulment of the bond by the board of private banking by showing that Sossong had not actually ceased the sale of steamship tickets. The difficulty with this effort is that, unless the banking board were imposed on by a false statement, or were misled fraudulently, the decision of the board that Sossong was in exempted class 6 would be conclusive.

Judge EVANS, in the court below, assumed the board's action in releasing the bond was based on the supposition that the Act of July 17, 1919, as amended, repealed that portion of section 8, clause 6, which related to the sale of steamship tickets. There is no evidence to support that conclusion, and, moreover, the minutes of the meeting speak otherwise.

We affirm the decree of the court below on the grounds discussed in this opinion.

The order is affirmed with a procedendo.