## Perrine's Appeal

J. A. *Stranahan* and Thomas H. *Armstrong*, for appellant.

L. R. *Rickard*, for Borough of Mercer.

*Hiram M. Drake*, for interveners.

ROWLEY, P. J., August 5, 1946.—This is an appeal from an ordinance adopted by the council of the Borough of Mercer prohibiting, within the areas defined in the ordinance, the construction or installation of

"any tanks or other facilities for the storage of gasoline, oil or other highly inflammable or volatile substances, as a bulk station plant, for the purpose of storing and transporting said gasoline", etc.

The ordinance was enacted and approved April 9, 1946.

Procedure by appeal is authorized by the Act of May 18, 1933, P. L. 818, 53 PS §12900. See Sipe v. Tarentum Borough, 263 Pa. 338.

Appellant, having on January 21, 1946, ascertained from the borough council that there was no municipal limitation upon the erection of an overhead gasoline bulk storage plant, purchased a site and contracted with a manufacturer for several overhead storage tanks to be fabricated according to his particular specifications at a cost of some $6,000.

Thereafter the borough council enacted the ordinance in question.

Appellant contends:

1. The borough council was without authority to adopt such an ordinance.

2. Conceding the authority of the borough to enact the ordinance, appellant, by reason of the antecedent actions and representations of the council and burgess, is unaffected by the ordinance.

From the testimony adduced at the hearing we make the following

## Findings of fact

1. On January 21, 1946, appellant appeared at the meeting of the borough council, all councilmen, the burgess, and the borough solicitor being in attendance. Appellant there inquired of council whether there was a borough ordinance limiting or regulating erection of an overhead gasoline bulk storage, whereupon he was informed by council that there was no such ordinance.

2. Thereupon appellant declared to the meeting his intention of erecting an overhead bulk storage for

gasoline upon a site on South Erie Street then owned by one Willis and theretofore occupied as a public garage and gasoline filling station.

3. In the course of the council meeting there was some discusion of the contour of the premises and council determined to meet upon the ground at noon of the following day (January 22, 1946).

4. On the appointed day council, except one member, and the burgess met with appellant on the site. Appellant suggested that an abutting alley be graded and improved for all-weather use, whereupon it was agreed that appellant should remove the alley top-soil and that the borough should thereafter apply a gravel surface.

5. Subsequently, appellant having removed the top-soil, the borough applied some gravel.

6. Subsequent to the meeting on the ground appellant purchased the site, and thereafter contracted for the manufacture and erection upon the premises of eight steel fuel tanks, each having a capacity of 10,000 gallons, at a cost of some six thousand dollars.

7. On April 9, 1946, the borough council enacted the prohibitory ordinance.

8. On April 16, 1946, appellant filed an application and plan covering proposed installation of equipment for the storage and handling of inflammable liquids with the Bureau of Fire Protection, Pennsylvania Motor Police, Commonwealth of Pennsylvania.

9. On April 17, 1946, the Bureau of Fire Protection approved the application and certified that appellant's plans and specifications met the requirements of the Bureau of Fire Protection, Pennsylvania Motor Police.

10. Appellant's plans and specifications include all known safety devices.

11. The site of the proposed installation is 75 feet distant from the United Presbyterian Church, and is therefore within a prohibited area under ordinance no. 211.

12. This appeal was taken within the prescribed period.

## Discussion

We shall first consider the authority of the borough to enact such an ordinance.

Appellant argues that the power to regulate the installation proposed is committed to the Pennsylvania State Police by the Act of April 27, 1927, P. L. 450, as amended by the Acts of June 29, 1937, P. L. 2403, and April 28, 1943, P. L. 123. Having obtained approval by such agency, appellant says his right to proceed with his structure has been established.

Appellant further argues, a borough having only such powers as are delegated by the State, the burden is on appellee to designate the statute which confers upon the borough the authority here exercised. He says that the ordinance cannot be justified as a zoning ordinance under the Act of June 29, 1923, P. L. 957, because of failure of the borough to comply with the preliminary steps required for the validity of a zoning ordinance. Appellant finds no other statute to support the action of the borough.

Appellee, however, finds warrant for the ordinance in The General Borough Act of May 4, 1927, P. L. 519, sec. 1202, 53 PS §13334, which authorizes a borough:

"To prohibit the manufacture, sale, or exposures of fireworks, or other inflammable or dangerous articles; to prescribe the quantities of inflammable articles that may be kept in place; and to prescribe such other safeguards as may be necessary."

Appellee also cites the following quotation from the opinion in Manorville Borough v. Flenner, 286 Pa. 103:

"It is our conclusion . . . that . . . the municipality has power to regulate the storage of dangerous commodities, which admittedly gasoline is, under certain conditions. . . ."

We think appellant need not rely upon the doubtful application of the statute above quoted for the power of the borough to enact the instant ordinance.

The State has imposed various obligations upon boroughs, and has granted various rights to them, with respect to many matters which bear a substantial relation to the public health, safety, morals, or general welfare. Authority for a borough board of health, fire department, building code, zoning ordinance, etc., illustrates delegation of such power to the boroughs.

Anything which offers or fairly suggests a threat to the health, safety, or morals of the community, in the absence of action by the State, is a matter for reasonable municipal regulation, and courts will not require a borough to designate the particular statute which grants the precise power as a condition to the exercise of such power.

" 'A statutory grant of a power or right carries with it, by implication, everything necessary to carry out the power or right and make it effectual and complete' ": Lehigh Valley Coal Company Appeal, 351 Pa. 108, 112.

". . . all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people": White's Appeal, 287 Pa. 259, 265.

In our opinion, the authority conferred upon the State Police by the Act of 1927, as amended, is not inconsistent with the power of a borough to supervise and reasonably limit the *site* of the storage of large quantities of gasoline within its boundaries.

In Pennsylvania Co., etc., et al. v. Sun Co., 290 Pa. 404 (syllabus), the Supreme Court declared:

"The storage of gasoline in large quantities does not constitute a nuisance per se, and will not create a fire hazard where it appears that the storage tanks will be surrounded by fire ditches and will be equipped

with all modern appliances to protect adjoining property; the manner of storage determines the question of danger of fire."

We quote the following from Manorville Borough v. Flenner, 286 Pa. 103, 107:

"Summarizing the findings of the trial judge, . . . it was concluded that the storage of gasoline in unlimited quantities in properly constructed and equipped tanks such as those erected in plaintiff borough is not dangerous to life or property, and it can be and is stored in large quantities in thickly populated districts without danger, that the storage of the amount of gasoline provided for in the tanks in question, 36,000 gallons, is not dangerous within itself, if properly regulated, and, when properly supervised, the use of such appliances for the storage of gasoline as have here been provided does not create a fire hazard to the travelling public or the inhabitants of plaintiff borough. Under these findings, it could not be determined otherwise than that the ordinance in question is unreasonable. It was conclusively shown that not the amount of gasoline stored, but the manner of its storage, determines the question of danger therefrom, and that as here stored in modern scientifically constructed tanks it is not dangerous."

Notwithstanding the authorities above quoted, we should be unwilling to hold either that the borough lacks authority to restrict the location of gasoline bulk storage to prescribed areas or that the instant ordinance is unreasonable.

Gasoline may be stored "in thickly populated districts without danger" if "properly regulated" and "properly supervised", but proper regulation and proper supervision may not be so well assured in a small borough as in a larger municipality.

All the cases dealing with the subject, as well as the testimony in the instant case, emphasize the question of the origin of fire within the storage site. Has ade-

quate consideration been given to the consequences of a conflagration originating without the plant but communicating with the storage? This aspect might present a grave problem for a community dependent upon limited fire control equipment and without adequate provision for inspection of likely fire hazards.

Gasoline has become a virtual necessity in modern life. There must be storage and transportation if this necessity is to be supplied. The location of the storage must have a reasonable relation to those who distribute it and to those who consume it. In a city it is commonly impracticable to isolate the storage, consequently storage in built-up sections is permitted. In theory, a large quantity of gasoline is as benign as an equal quantity of water, provided the storage tank is "properly equipped" and "properly supervised".

The best opinion is that gasoline as such is not a fire hazard but that the hazard arises when a vapor is formed by the mixture of gasoline and air. A tank partially filled with gasoline contains some quantity of this inflammable vapor. Modern tanks are supplied with valves to provide for the escape of such vapor. The instant testimony is that if this exhaust becomes ignited the flame cannot communicate with the contents of the tank because the escape valve is specially constructed to prevent that contingency. The devices for withdrawing gasoline from the tank and for replenishing the tank are so constructed that a flame from the exterior cannot reach the interior of the tank during either process.

Perhaps a great conflagration might expose a storage tank to heat of sufficient intensity to cause untoward results; however, that is a doubtful possibility. Although we may say the danger is not inherent within the gasoline and that there can be a fire hazard only if there be deficient equipment or faulty handling, the fact remains that the storage of great quantities of

gasoline does involve hazards. Not uncommonly, safety devices fail to operate, with dire results. The operation of motor vehicles, elevators, and other modern appliances, involves serious hazards, and while we must assume certain risks in order to participate in the comforts and luxuries of modern life, no earnest effort to reduce, by reasonable means, attendant dangers, should be discountenanced.

Furthermore:

"Courts should hesitate in declaring invalid the express will of the people of a municipality. There is much to be said in permitting residents to determine rules and regulations relating to their local affairs": Kistler v. Swarthmore Borough, 134 Pa. Superior Ct. 287, 292.

It is a fundamental rule that a court will never pass on the constitutionality of a statute (and by analogy an ordinance), unless it is absolutely necessary to do so to decide the cause before it: Commonwealth, to use, v. Picard et al., 296 Pa. 120, 124.

A statute may operate in an unconstitutional way as to one person, as to whom it may be declared void, and yet as to others, be effective: Pennsylvania R. R. Co. v. Driscoll et al., 336 Pa. 310.

Appellant's second point is that, at all events, he is unaffected by the ordinance. In this contention he is on firmer footing.

It is undisputed that at the council meeting of January 21st, appellant was informed that there was no municipal restriction upon the installation of a bulk storage tank for gasoline, nor is it denied that appellant announced to the council assembled, his intention of erecting such a plant upon a designated site. It cannot be reasonably argued that the discussions between council and appellant in that meeting, and at the meeting upon the site the following day, were any-

thing less than an implied authorization to appellant to proceed with the proposed construction.

The borough does not claim that there was misrepresentation by appellant of his proposed plan, nor does it claim any misapprehension on the part of council as to the character of the installation.

The objection expressed in the ordinance is not directed to anything lacking in appellant's proposed equipment but it is directed to any installation whatsoever for the storage of gasoline.

Appellant purchased the site and made his commitments for equipment after obtaining permission of council to make the installation. Council was the appropriate authority to grant or withhold the permission sought. If the contemplated installation was a nuisance per se, or was otherwise unlawful, the council could not bargain away its duty to the community. But where, as here, there was power to authorize the structure, the council could not revoke the permission theretofore granted, after appellant had been induced by the previous action to acquire real estate and bind himself for the purchase of equipment. Thereafter, a property interest in appellant arose, a vested right protected by the Constitution.

### Conclusions of law

From the facts found and for the reasons hereinbefore set out, we are constrained to conclude that ordinance no. 211, enacted by the council of the Borough of Mercer on April 9, 1946, is unconstitutional, ineffective, and void as to R. S. Perrine, appellant.

### Order

And now, August 5, 1946, the appeal of R. S. Perrine from ordinance no. 211, enacted by the council of the Borough of Mercer, Pa., approved April 9, 1946, is sustained at the cost of appellee.